No. 46,169

STATE OF KANSAS, *Appellee,* v. PATRICIA A. FRIZZELL, *Appellant.*

(485 P. 2d 160)

Opinion filed May 15, 1971.

*G. Edmond Hayes,* of Wichita, argued the cause and was on the brief for the appellant.

*Kerry J. Granger,* Assistant County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *Raymond F. Berkley,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant-appellant (Patricia A. Frizzell) appeals from a conviction by a jury on two counts of grand larceny as defined in K. S. A. 21-533 [now K. S. A. 1970 Supp. 21-3701].

Defendant raises two contentions on appeal. She first claims the trial court erred in admitting an admission against interest ob-

tained from her by a Highway Patrol Trooper. She says the admission was obtained without any explanation of her constitutional rights and while she was under substantial restraint of liberty. Her second point is that the trial court erred in overruling defendant's motion to suppress certain evidence and later in admitting that evidence at the trial.

There is little dispute about the facts. On November 7, 1969, Trooper Gonzales, of the Kansas Highway Patrol, was assisting other troopers in conducting a driver's license check lane south of Hutchinson. Gonzales testified that he observed a 1968 Oldsmobile approach within approximately 400 feet of the check lane at a slow rate of speed. It pulled into a driveway, turned around, and proceeded in the opposite direction. Gonzales followed and stopped the automobile for the purpose of checking the operator's driver's license. The driver was one Ronnie G. Whitehead. The passengers were Ola Mae Roberson, in the front seat, and defendant (Patricia A. Frizzell), in the rear seat. Gonzales approached the vehicle on the driver's side and asked Whitehead to produce his driver's license. Whitehead replied that he had left his license at home. Gonzales testified that he proceeded to explain to Whitehead the procedure, whereby he would issue a citation to Whitehead which could later be cured by the production of his driver's license. During the course of the conversation, Gonzales saw a mound on the rear seat, directly behind the driver, which he described as covering the rear seat and was about two and one-half feet long, two feet high, and covered by a lady's coat. He further testified that he thought at first that the coat might be covering a body, then he saw two sleeves dangling from beneath the coat with what appeared to be a department store price tag attached by a string to one of the sleeves.

While continuing the conversation with Whitehead about his driver's license, Gonzales saw defendant take another coat and place it upon the coat that was covering the mound and pull it down over the mound. At this juncture, he observed Ola Mae Roberson, the passenger in the front seat, turn around, reach back between the bucket seats, and push the protruding sleeve and price tag under the covering coat.

At this point, without directing the question to any particular person, Gonzales asked "what was situated in the rear." His testimony thereafter appears as follows:

"Q. How many times did you ask?
"A. Three times that I know of.
"Q. And did you ever get an answer?
"A. Yes, sir, I did.
"Q. Who gave you that answer?
"A. Miss Frizzell.
"Q. What did she say?
"A. She stated the clothing was hers, and they had been on a trip, or was going on a trip, I don't recall which.
"Q. All right, did you ask her anything after you received this information?
"A. I asked why they didn't have any luggage, and I never did get an answer.
"Q. Did you ever get an answer to that?
"A. No, sir, I didn't."

Whitehead was then asked to accompany Gonzales to the patrol car where he (Gonzales) radioed for assistance. He was informed that immediate assistance was unavailable. Gonzales returned to the Oldsmobile.

Gonzales described the ensuing events as follows:

"A. As I was approaching the vehicle, through the rear window I could see the passenger in the front, she had been turned to her left and I could see her turn back around and she was placing or had some activity in the front part of her body.
"Q. What did you do then after you approached the vehicle?
"A. After I approached the vehicle I asked the ladies if they had any identification.
"Q. Did you receive any?
"A. I believe I received a driver's license from the passenger in the front, and the lady in the rear states she didn't have any identification with her.
"Q. What did you do after you made these inquiries?
"A. Well, I asked the ladies if they would exit the vehicle, which they consented to do, and they exited the vehicle on the right side, and we waited there until Trooper Keffer could arrive."

Trooper Keffer arrived in about five minutes. Gonzales then entered the automobile and found new articles of clothing beneath the coats in the back seat. The clothing consisted of seven or eight ladies' dresses and three or four men's suits. It was later determined that the dresses had been stolen from Pegues Department Store and the suits from the J. C. Penney Store in Hutchinson.

Defendant was charged with two counts of grand larceny.

On direct examination Gonzales, over defendant's objection, was allowed to relate her admission that the clothing was hers. Defendant claims this was reversible error since she had not been advised of her rights under the rule of *Miranda v. Arizona,* 384 U. S.

436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974. A short answer to defendant's contention is that the general query directed to the occupants of the automobile, which finally brought forth defendant's answer, did not constitute custodial interrogation as defined in *Miranda*.

Under the circumstances attendant here, the question put by Gonzales to the occupants of the automobile was nothing more than routine, on-the-scene questioning. When the question was posed the investigation had not "focused" on any particular person, nor had Gonzales determined that a crime had been committed. Defendant was under no compulsion to answer. In fact, the further question by Gonzales concerning the absence of luggage was not answered by anyone. Gonzales was discussing the driver's license problem with Whitehead when he noticed the mound and put the question. The circumstances surrounding the inquiry clearly fall within the realm of routine on-the-scene questioning. Gonzales had neither done nor said anything which could be said to have deprived defendant of her freedom of action in any significant way.

The distinction between custodial interrogation, as defined in *Miranda*, and on-the-scene questioning is recognized in the opinion itself. The Miranda court noted that the decision was not intended to hamper the traditional function of police officers investigating crimes and that general on-the-scene questioning was not affected by the holding.

This court has recognized the distinction, drawn in *Miranda*, between custodial interrogation and on-the-scene questioning in two recent cases. See *State v. Porter*, 201 Kan. 778, 443 P. 2d 360, cert. den., 393 U. S. 1108, 21 L. Ed. 2d 805, 89 S. Ct. 919, and *State v. Phinis*, 199 Kan. 472, 430 P. 2d 251. In *Porter* it was held:

"By custodial interrogation is meant the questioning of persons by law enforcement officers which is initiated and conducted while such persons are held in legal custody or are otherwise deprived of their freedom of action in any significant way." (Syl. ¶ 1.)

In *Phinis* investigatory facts and admissions, elicited by officers on-the-scene, are clearly distinguished from custodial interrogation as defined in *Porter*.

We hold the admission by defendant that the mound consisted of clothing belonging to her came about during routine on-the-scene questioning at a time when defendant was not under compulsion and when she was not deprived of her freedom in any significant way.

Discussions of the distinction between on-the-scene questioning and custodial interrogation, in harmony with our holding, may be found in *Lowe v. United States* (9th Cir. 1969) 407 F. 2d 1391; *United States v. Gibson* (4th Cir. 1968) 392 F. 2d 373; and *Allen v. United States* (District of Columbia Circuit, 1968) 390 F. 2d 476.

Defendant's contention concerning the admission of the clothing into evidence was first raised by a motion to suppress evidence. The abbreviated abstract before us does not disclose the proceedings; however, we glean from the trial court's memorandum that a full scale hearing was had on the motion to suppress. Apparently, Gonzales gave essentially the same testimony on the hearing of the motion as that given at the trial, which is reflected in the record before us.

In its memorandum decision, denying the motion to suppress, the trial court recited the items seen and heard by Gonzales and then applied—we believe correctly—the reasonable man test in these words:

".  .  . To determine whether there was probable cause to make a search without a warrant the court must first determine the sufficiency of knowledge by the police officer, by comparison to what a reasonable man knowing all the facts which the police officer then knew, would have believed under all the circumstances.  .  . ."

The trial court concluded as follows:

"In reviewing the facts and circumstances in our current case this court is of the opinion there was sufficient probable cause to justify a search of the defendant's car. Again, local stores customarily remove the price tags and then box or place in cellophane wrappers any clothing that they sell."

Under the provisions of K. S. A. 8-244 Gonzales was lawfully authorized to stop the automobile to check the operator's driver's license. (7 Am. Jur 2d Automobiles and Highway Traffic, § 98, pp. 668-669; 5 Am. Jur 2d Arrest, § 43, pp. 733-734; 25 A. L. R. 3d, Annotation, p. 1076.) It is clear, Gonzales did not stop the vehicle as ruse or subterfuge to see what was in it, but rather as a good faith effort to check the driver's license.

Defendant was not arrested when the automobile was stopped nor at any time during the observations made by Gonzales. Thus, the reliance of defendant on *Henry v. United States*, 361 U. S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168, is misplaced.

Gonzales was lawfully at the driver's window when he looked into the automobile and saw and heard the actions and items,

which we believe ripened into the necessary probable cause to sustain his subsequent search.

This court has held that looking into a car window is not a search because a search implies prying into hidden places for that which is concealed, and it is not a search to see that which is in open view. Objects in plain view of an officer are subject to seizure and may be introduced into evidence if the facts and circumstances warrant the officer in believing that those objects are fruits, evidence or instrumentalities of a crime. (*State v. Wade,* 206 Kan. 347, 479 P. 2d 811; *State v. McMillin,* 206 Kan. 3, 476 P. 2d 612. See, also, *Harris v. United States,* 390 U. S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992, and *Williams v. United States* [5th Cir. 1968], 404 F. 2d 493.) The eye cannot commit a trespass condemned by the Fourth Amendment, and observation of objects and actions in the plain view of an officer is not a search. (*State v. Blood,* 190 Kan. 812, 378 P. 2d 548.)

We hold that the plain view doctrine applies not only to objects, but to actions observed. Recounting the facts and circumstances observed and heard by Gonzales, prior to his search of the vehicle, he saw—The vehicle avoid the driver's license check lane; the defendant put a coat over the pile of clothing in an effort to cover it up, the price tag dangling from the sleeve; the front seat passenger put the sleeve under the coat; he received evasive answers or silence in response to his questions. Finally, after placing Whitehead in the patrol car, he noticed the front seat passenger (Roberson) performing some activity with the pile, as if to hide something. Gonzales saw a continuous period of activity concerning what was under the coat in such a manner as to indicate that the occupants were trying to hide something.

There was no search and seizure until Gonzales entered the vehicle and took the coat off the pile. Looking to all the facts and circumstances known to Gonzales at that time, we believe that he had probable cause for a search. This court set out the requisites of probable cause in *State v. Little,* 201 Kan. 94, 439 P. 2d 387, where we said:

". . . Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested. (citing cases.)" (p. 96.)

Defendant makes a point that Gonzales used the word "curious" in describing his impression of the coat covered mound. Regardless

of how he described his impression at the time Gonzales, from his subsequent observations, became convinced the coat covered contraband. The trial court heard Gonzales relate his observations and describe his impressions on two occasions and reached the conclusion there was probable cause for a search. Having heard Gonzales first hand and in person, the trial court was in a far more favorable position to evaluate his testimony in this regard.

Measured by the standards of the reasonable or prudent man rule, we believe the facts and circumstances within the knowledge of Gonzales were sufficient to give him probable cause to believe there was contraband or other items, which offend against the law, under the covering coat at the time he entered the automobile. It follows that the search of the automobile and subsequent seizure of the articles of clothing did not violate defendant's Fourth Amendment right to be free from unreasonable search and seizure.

The judgment is affirmed.