No. 47,593

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee*, v. R<small>ONALD</small> E. C<small>ARSON</small>, *Appellant.*

(533 P. 2d 1342)

Opinion filed April 5, 1975.

*Michael D. Gragert,* of Wood and Gragert, of Wichita, argued the cause and was on the brief for the appellant.

*Wallace Franklin Davis,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *John M. Jaworsky,* former county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Ronald E. Carson was convicted by a jury of the offense of attempted burglary. He now appeals from the judgment and sentence imposed.

Certain trial errors alleged require review of the prosecution's evidence. The property which was the subject of the offense was a building occupied by Pruitt's Pawnshop in Augusta. On June 15, 1973, at about 8:10 p. m., two Augusta police sergeants saw appellant standing in front of the pawnshop. He was observed to take something from his pocket with which he appeared to be prying on the hasp of the screen door. When appellant noticed the police officers watching him he entered an automobile and left the scene. Sometime after 9:00 p. m. that same evening a woman saw appellant standing inside the screen door of the pawnshop with what looked like a jack handle in his hand; it appeared he was trying to get the inside door open. The woman immediately notified the police, giving a description of appellant and his clothing. Two policemen arrived at the pawnshop at 9:20 p. m. They observed the door partially open; the lock had been torn from the screen door and a small window above the door knob on the inside door had been knocked out. A substance that appeared to be blood was on the sidewalk, the threshold, the door knob and on pieces of broken glass lying inside the door.

A few minutes later a police sergeant received a call that the suspect, Ronald Carson, had been located at the Augusta Recreation Center. Proceeding there the sergeant found appellant in the presence of three other police officers. He was bleeding from a laceration on his right index finger. The sergeant asked him how he cut his finger. Appellant replied he had locked himself out of his car and had cut his finger on the right door glass while trying to get the car door unlocked. The sergeant inspected appellant's vehicle and found that the right window glass on it was missing. The entire window was gone but there were no particles of broken glass to be found and there was dirt in the window track which indicated the window had not just been knocked out.

Appellant was taken to the police station where he was informed of his constitutional rights and arrested for burglary. Appellant's blue jeans which appeared to have blood stains on them were taken from him and these as well as pieces of glass, tools and scrapings from the door knob were all sent to the Wichita police forensic laboratory for examination.

Appellant's first specification of error derives from testimony respecting the examination of these articles. The officer who collected them testified that the glass and other articles appeared to have blood stains on them. The officer then testified twice upon direct examination he had sent them to the laboratory for the purpose of determining whether the stains on them were human blood and that the tests were made. He twice testified a report from the laboratory had been made and that he had seen the report. Then the following occurred:

"Q. Has anything come to your attention since June 15, 1973, that would indicate to you that this was not blood on this glass?
"No."

The result of the laboratory tests was not otherwise put into evidence. Appellant's motion to strike the testimony quoted above as hearsay and for want of proper foundation was overruled. A statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible, with certain exceptions (K. S. A. 60-460). Had the sergeant testified the laboratory report stated the stains on the exhibit were blood his testimony would have been inadmissible. Instead the sergeant testified he had seen the report and that nothing had come to his attention to alter his conclusion the stains were blood. No exception to the hearsay rule exists with respect to a written report of the result of a laboratory blood test. In order to receive such a report into evidence a foundation must be laid as to the identity of the report and the manner of examination (*State v. Foster*, 198 Kan. 52, 422 P. 2d 964). The testimony here circumvented these rules, deliberately it would appear, inasmuch as it was elicited twice in most instances as a result of leading questions put to the witness by the then county attorney. A lawyer should not by subterfuge put before a jury matters which it cannot properly consider (Code of Professional Responsibility, ABA, Ethical Consideration 7-25). Our conclusion is the trial court erred in permitting the challenged testimony to be considered by the jury.

Appellant also urges the trial court erred in admitting, over objection, the testimony of the other police sergeant concerning statements made by appellant as to how he had cut his hand, in the absence of any prior Miranda warning as to the right to remain silent, use of any statement made and right to the presence of an attorney. Elaborating the evidence already related, this sergeant was one of the two officers who earlier in the evening had observed appellant standing in front of the pawnshop apparently prying on the screen door. This officer also had later, after a police report and description of appellant had been broadcast, gone to the pawnshop where broken glass and bloodstains were plainly visible. He testified that at about 9:47 p. m. he received a radio message that "the suspect, Ronald Carson" had been located at the recreation center; he then went to that location; "The Defendant was not under arrest when I first saw him at the recreation center but he was in the *custody* of three armed officers. . . . I had an indication at the time I asked the Defendant how he cut his hand that he had been at Pruitts". (Emphasis supplied.) The sergeant gave no Miranda warning prior to eliciting by direct questioning appellant's statements as to how he had cut his hand.

In *Miranda v. Arizona*, 384 U. S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602, 10 ALR 3d 974, it is stated:

". . . the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (p. 444.)

The state contends the officer's concern in his questioning of appellant as to how he cut his hand was merely for the latter's welfare; that at the time appellant was not yet sufficiently suspect; the questioning occurred at the investigatory stage and did not constitute custodial interrogation of one accused of crime. The picture presented belies the state's arguments. It is true *Miranda* recognizes that general on-the-scene questioning of citizens in the fact finding process does not constitute custodial interrogation requiring advice of rights but this generality does not lead to the state's conclusion. Custodial interrogation may occur outside the police station (*Orozco v. Texas*, 394 U. S. 324, 22 L. ed. 2d 311, 89 S. Ct. 1095). However, there must be some police-instigated restraint before a suspect can be regarded as being in the custody of the officers (*State v. Brun-*

*ner*, 211 Kan. 596, 507 P. 2d 233). In an annotation entitled, "What Constitutes 'Custodial Interrogation' Within Rule of Miranda v. Arizona Requiring That Suspect Be Informed of his Federal Constitutional Rights Before Custodial Interrogation", 31 ALR 3d 565, the following appears:

"It is submitted that most of the important circumstances mentioned by the courts as bearing on whether the person questioned was subjected to 'custodial interrogation' requiring Miranda warnings can be classified under the following general headings: (1) the nature of the interrogator; (2) the nature of the suspect; (3) the time and place of the interrogation; (4) the nature of the interrogation; and (5) the progress of the investigation at the time of the interrogation." (p. 577.)

The interrogating sergeant was one of the two police officers who had seen appellant behaving suspiciously at the pawnshop earlier in the evening. Later another witness had seen appellant at the pawnshop and had relayed to the police her information with appellant's description. The interrogating officer investigated the breakin at the pawnshop where blood stains were much in evidence. Based upon information the police had this officer in his testimony referred to appellant as "the suspect", as well he might for at that time he had the essential information relied upon by the prosecution for appellant's conviction. However, the fact the investigation had focused upon appellant is not the same as finding that he was in custody, thereby triggering the need for a Miranda warning (*State v. Brunner*, supra). The question whether an investigation has focused on a suspect as derived from *Escobedo v. Illinois*, 378 U. S. 478, 12 L. ed. 2d 977, 84 S. Ct. 1758, is not the wholly determinative test whether the suspect is in custody. The fact the suspect is the focus of the investigation, standing alone, does not trigger the need for a Miranda warning (*United States v. Hall*, 421 F. 2d 540, cert. den., 397 U. S. 990, 25 L. ed. 2d 398, 90 S. Ct. 1123; *State v. Brunner*, supra; Kamisar, " 'Custodial Interrogation' Within The Meaning of *Miranda*," Criminal Law and the Constitution [1968] 335, 338). Nonetheless, the fact the investigation has focused on a particular individual is still frequently one of the determinative factors in arriving at a decision whether a Miranda warning is required (*Brown v. Beto*, 468 F. 2d 1284). In the ALR annotation referred to above this statement appears:

"Although no longer the sole test as it was under the Escobedo decision, the progress of the investigation—whether it has 'focused' on a particular suspect as the accused—remains, for many courts, an important factor in determining whether 'custodial interrogation' has occurred." (p. 578.)

In *United States v. Hall,* supra, it was stated:

".  .  . we do think it suggests that in the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so. This is not to say that the amount of information possessed by the police, and the consequent acuity of their 'focus' is irrelevant. The more cause for believing the suspect committed the crime, the greater the tendency to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers *Miranda,* and *vice versa.* But this is simply one circumstance, to be weighed with all the others." (p. 545.)

In the case at bar the spontaneity of the interrogation is not present as in the usual situation considered to be on-the-scene questioning. For example, in *State v. Phippen,* 207 Kan. 224, 485 P. 2d 336, a police officer, having just arrived at the scene of a homicide, observed the deceased and asked what had happened. The question was held to be a non-custodial investigatory inquiry. In *State v. Frizzell,* 207 Kan. 393, 485 P. 2d 160, a police officer stopped a car for the purpose of checking the operator's driver's license. The officer noticed a mound in the rear of the vehicle covered by a coat from which protruded sleeves of clothing with price tags attached. The officer inquired what was under the mound and was told by the defendant it was her clothing. It was held the question was on-the-scene fact finding not requiring a Miranda warning. See, also, *State v. Hill,* 211 Kan. 239, 505 P. 2d 704.

In the present case appellant was the prime suspect from the time police learned of the breakin. The interrogating officer had virtually all the facts respecting it and he knew what to look for. As specifically testified to by him when appellant was questioned at the recreation center "he was in the custody of three armed officers". There can be no doubt appellant was deprived of his freedom of action in a significant way. The officer correctly assessed the situation in his testimony—appellant was in the *custody* of three armed policemen and was being detained by them until the arrival of the officer who had all the information. The subsequent statements by appellant were the product of "custodial interrogation", they were inadmissible in the conceded absence of any Miranda warning and should have been stricken by the trial court.

We have now noted two trial errors in the admission of evidence. It is not always easy to say when error is so harmful as to require reversal. Sufficiency of the evidence to sustain appellant's convic-

tion was not made a point upon appeal—with the result the record does not contain all the evidence adduced at trial. In this situation our conclusion is that the combined effect of the two errors was such that appellant was deprived of a fair trial and the errors therefore cannot be deemed harmless. New trial is in order. A third trial error alleged by appellant need not be considered since it arises out of an incident virtually certain not to reoccur.

The judgment is reversed with directions to grant appellant a new trial.

APPROVED BY THE COURT.

FATZER, C. J., dissents.

FROMME, J., not participating.