No. 48,970

STATE OF KANSAS, *Appellee,* v. DIANA R. EDWARDS and DAVE L. LONGSTRETH, *Appellants.*

(579 P.2d 1209)

Opinion filed June 10, 1978. ▮▮▮▮▮▮▮▮▮▮▮▮▮

*James D. Hopper,* of Manhattan, argued the cause and was on the brief for the appellant Diana R. Edwards.

*James W. Wilson,* of Alkire, Wood, Wilson and Wilson, of Wichita, argued the cause and was on the brief for the appellant Dave L. Longstreth.

*Harold T. Pickler,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a direct appeal by codefendants Diana R. Edwards and Dave L. Longstreth from their convictions by jury trial of felony murder (K.S.A. 21-3401) and aggravated robbery (K.S.A. 21-3427). Each defendant received a life sentence on the murder conviction and a concurrent fifteen years to life sentence on the robbery conviction.

In the early morning hours of September 24, 1974, the body of Rudy R. Russell was found in the parking lot of Frankie's Lounge in Wichita. He had been shot in the chest. There were no leads in the homicide until December 6, 1975, when an informant told police that Diana R. Edwards had said she was present at the killing. Police located Ms. Edwards in Leavenworth and Wichita officers questioned her at her home on January 14, 1976. Because of people coming in and out of the apartment, Ms. Edwards requested that the questioning continue elsewhere. The officers and Ms. Edwards went to the Leavenworth police station where the questioning continued. Ms. Edwards was not given the *Miranda* warning at any time in Leavenworth. She admitted being present at the homicide but did not implicate herself. She identified codefendant Dave L. Longstreth as the person who shot Russell as Longstreth was robbing him.

The officers relayed this information to their superior in Wichita. They were advised to see if Ms. Edwards would accompany them to Wichita for further questioning (her home had previously been in El Dorado). She agreed and was questioned the following day at the Wichita police station. She was given a *Miranda* warning at that time and was told she was free to leave but declined to do so. She repeated essentially the same story given earlier. Longstreth was arrested a short time later. On questioning, Longstreth admitted shooting the victim in a robbery attempt, but implicated Edwards as being an accomplice in the

robbery. Edwards was then confronted with the Longstreth statement and gave a subsequent statement which somewhat modified her earlier statements. She and Longstreth were both charged and convicted of felony murder and aggravated robbery. The statement of Longstreth and the final statement of Edwards are similar in many respects. All statements concur as to the basic acts of the two defendants. The defendants' statements are in accord that they were living together in El Dorado, that they drove to Wichita with Ms. Edwards being the driver, that they stopped at the T-Bone Lounge, that Longstreth had a gun there but did not get out of the car, that they drove to Frankie's Lounge, that Longstreth got out of the car and approached Russell, ran back to the car after he shot him, and the pair then drove back to El Dorado. There is no substantial disagreement on how they disposed of the gun used as well as the destruction of the credit cards taken and the disposal of the victim's wallet. The final Edwards' statement implies a knowledge of the fact that Longstreth intended to rob Russell. The statement of Longstreth is that he robbed Russell at the urging of Edwards.

At trial Edwards testified and strongly denied any knowledge of the robbery plan. Longstreth did not testify. The statement of Longstreth was introduced as was the final statement of Edwards. No limiting instruction was requested or given.

With this summary of the facts, we will turn now to the points of error urged by each defendant.

### DIANA R. EDWARDS

Ms. Edwards claims error in the admission of her statement. She contends that the final statement was "fruit of the poisonous tree" of her earlier statements. This is based on the contention she was actually in custody when questioned in Leavenworth without a *Miranda* warning.

The rules on custodial interrogation were given in *State v. Bohanan*, 220 Kan. 121, 551 P.2d 828 (1976):

"A defendant's statements to a police officer are not automatically inadmissible for failure to give him the *Miranda* warnings unless the statements are the product of custodial interrogation.

"A person who has not been arrested is not in police custody unless there are significant restraints on his freedom of movement which are imposed by some law enforcement agency." (Syl. 1, 2.)

The determination of custodial interrogation must be on a case-by-case basis. In *Bohanan* we further said:

"Since *Miranda* this court has developed a number of general guidelines to be applied in determining whether or not a custodial interrogation has taken place. In *State v. Brunner,* 211 Kan. 596, 507 P.2d 233, we held that a person who has not been arrested is not in police custody unless there are *significant* restraints on his freedom of movement which are imposed by some law enforcement agency. We have also declared that a general questioning of citizens in the course of an investigation in the fact finding process does not constitute custodial interrogation. We defined an investigatory interrogation as the questioning of persons by law enforcement officers in a routine manner in an investigation which has not reached an accusatory stage and where such persons are not in legal custody or deprived of their freedom of action in any significant way. (*State v. Frizzell,* 207 Kan. 393, 485 P.2d 160.) In *State v. Carson,* 216 Kan. 711, 533 P.2d 1342, Syl. 5, we suggested that circumstances bearing on whether a person questioned was subjected to 'custodial interrogation' requiring *Miranda* warnings can be classified under the following general headings: (1) The nature of the interrogator; (2) the nature of the suspect; (3) the time and place of the interrogation; (4) the nature of the interrogation; and (5) the progress of the investigation at the time of interrogation. In *Carson* we also stated that the fact a suspect is the focus of an investigation, standing alone, does not trigger the need for a *Miranda* warning but it may be one of the determinative factors in arriving at a decision whether such a warning is needed." (pp. 128-129.)

In *Bohanan* we found the *Miranda* warning was not necessary because defendant was not in custody. When he gave a confession there were no charges or warrant, questioning was merely based on a hope of getting more information leading to identity of the person committing the crime, the person was free to go, and there was no threat or force. All these factors exist in the present case. The record has been carefully examined and it is clear that Ms. Edwards was not in custodial interrogation in Leavenworth. The questioning was part of the investigative process and no *Miranda* warning was necessary. The point is without merit.

Ms. Edwards next complains of being tried in a joint trial with Longstreth who did not testify, but whose statement incriminated her. The trial court in admitting the statement over her objection, applied the doctrine of interlocking confessions. In *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978), we held that this doctrine was not an exception to *Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968). The *Sullivan* case held:

"In a criminal proceeding a previous voluntary statement by the accused relative to the offense charged is admissible as against the accused under K.S.A. 60-460(f) as an exception to the rule excluding hearsay evidence. However, such a

statement or confession is admissible only against the person making the statement or confession.

"A confession by an accused relative to the offense charged is admissible only against the confessor and in a joint trial of codefendants it is necessary that an instruction be given to the jury limiting the use and purpose of the confession to a determination of the guilt of the confessor. In the absence of such a limiting instruction this court under the facts of this case cannot say it was harmless error beyond a reasonable doubt." (Syl. 3, 4.)

The question then becomes whether the admission of the Longstreth statement without a limiting instruction as to Edwards was harmless error beyond a reasonable doubt. The record has been carefully examined. It is improbable that Edwards would have been convicted without the Longstreth statement. Under these circumstances its admission without a limiting instruction was not harmless error. The convictions of Edwards must be reversed and the case remanded for a new trial as to Edwards.

### DAVE L. LONGSTRETH

Mr. Longstreth claims error in the admission of his statement on the same "fruit of the poisonous tree" theory urged by Ms. Edwards. The previous determination of this issue adversely to Ms. Edwards disposes of this point.

Mr. Longstreth next claims error in the failure of the court to sever the trials. He had ample opportunity to cross-examine Ms. Edwards. In addition, his own statement alone could have convicted him on both counts. This point is without merit.

Longstreth's theory of defense was voluntary intoxication. The trial court refused to instruct on voluntary intoxication. Thus defendant contends he was thereby deprived of his defense. The defendant presented evidence of his drinking habits. His own statement showed his intent to rob when he approached the victim. In *State v. Rueckert,* 221 Kan. 727, 732-733, 561 P.2d 850 (1977), we said:

"Evidence of intoxication alone does not necessitate the giving of instructions covering lesser degrees of homicide in a felony murder case when the underlying felony is aggravated robbery. Voluntary intoxication is not a defense to a general intent crime, although it may be used to demonstrate the inability to form a particular state of mind necessary for a specific intent crime. (*State v. Farris,* 218 Kan. 136, 542 P.2d 725.) Specific intent is not an element of the crime of aggravated robbery. (*State v. Thompson,* 221 Kan. 165, 558 P.2d 1079.) Therefore, either defendant perpetrated the robbery and is responsible for the murder, or he did not commit the robbery and murder, and is not guilty of any degree of homicide. . . ."

See also *State v. Cunningham,* 222 Kan. 704, 707-708, 567 P.2d 879 (1977), where drug intoxication was determined not to be a defense to aggravated robbery as no specific intent is required.

Voluntary intoxication is not a defense to general intent crimes. Specific intent is not an element of a felony murder or aggravated robbery. Failure to give the instruction requested by Longstreth was not error.

Longstreth next claims error in the giving of instruction No. 9 as follows:

"The defendants are charged with First Degree Murder under the rule of law sometimes called the 'Felony Murder Rule.' It is not a defense to the charge of murder under the Felony Murder Rule that the killing was accidental.

"You are further instructed that if the jury is convinced beyond a reasonable doubt that it was reasonably foreseeable that a killing might occur in the perpetration of the crime of Aggravated Robbery the exact manner in which that killing might occur need not be foreseen."

He contends "approximate cause" (*sic*) should have been substituted for "reasonably foreseeable."

Instruction No. 2 included the following element: "(3) While in the perpetration of the crime of Aggravated Robbery, a felony."

The two instructions, taken together, adequately state the law of Kansas on felony murder.

Longstreth's final claim of error relates to the trial court's permitting the state to introduce evidence pertaining to the identity and death of Rudy Russell after Longstreth's counsel made the following statement:

"MR. WILSON:   We wish to admit, Your Honor, that the deceased is Rudy R. Russell, and that his identity is not a question of fact in this case; and that is as such that Mr. Russell did die on September 24th, 1974."

The state declined to accept that admission in lieu of testimony.

In a criminal prosecution the making of an admission by the defendant does not bar the state from proving the fact independently as though no admission had been made. (*State v. Johnson,* 216 Kan. 445, 448, 532 P.2d 1325 [1975]; *State v. Wilson,* 215 Kan. 28, Syl. 5, 523 P.2d 337 [1974].)

All points raised by defendant Longstreth have been carefully considered and found to be without merit.

The judgment of the lower court is affirmed as to the appellant Longstreth, but the convictions and judgment of Diana R. Edwards are reversed, and the case as to her is remanded for a new trial.