(656 P.2d 790)

No. 54,013

STATE OF KANSAS, *Appellant,* v. NANCY GOERING, *Appellee.*

Opinion filed January 20, 1983.

*Joseph L. McCarville, III,* county attorney, and *Robert T. Stephan,* attorney general, for appellant.

*Richard J. Rome,* of Hutchinson, for appellee.

Before REES, P.J., MEYER, J., and JAMES J. NOONE, District Judge Assigned.

REES, J.: The State appeals from a pretrial suppression order it claims is contrary to the evidence.

When the admission into evidence of a defendant's extrajudicial statement is challenged pursuant to a motion under K.S.A. 22-3215, the trial judge must conduct a hearing out of the presence of the jury to determine whether the statement is admissible as a hearsay exception (K.S.A. 60-460[*f*]). While the circumstances surrounding the making of the statement may be submitted to the jury as bearing upon the weight or credibility of the statement, the threshold issue of admissibility is for resolution by the trial judge. The State has the burden of proving admissibility. The ultimate issue to be decided, upon the totality of circumstances, is whether the statement was freely, voluntarily and intelligently made. *State v. Duncan,* 221 Kan. 714, 720, 562 P.2d 84 (1977); *State v. Kanive,* 221 Kan. 34, 35, 558 P.2d 1075 (1976). See also *State v. Baker,* 4 Kan. App. 2d 340, 342, 606 P.2d 120 (1980).

The *Miranda* warning is a required prophylactic for statements resulting from custodial interrogation. Standing alone, *Miranda* warnings given and rights subsequently waived do not automatically render statements made in response to custodial interrogation admissible. Rather, statements made during custodial interrogation are inadmissible unless the procedural safeguard of *Miranda* is timely applied.

In *State v. Newfield,* 229 Kan. 347, 623 P.2d 1349 (1981), the State's investigation focused on the defendant, defendant was given *Miranda* warnings, and defendant made statements in response to custodial interrogation. A question reviewed was

whether the statements were erroneously held to have been voluntary statements and admitted into evidence. The opinion states the duration and manner of interrogation, the accused's ability upon request to communicate with the outside world, the accused's age, intellect and background, and the fairness of the officers in conducting the interrogation are factors bearing upon the voluntariness of statements. 229 Kan. at 357. It was not held those are the sole and only factors. See also *State v. Costa*, 228 Kan. 309, 312, 613 P.2d 1359 (1980).

In the case before us, defendant is charged with abandonment of a child (K.S.A. 21-3604). The investigating officer testified an "abandonment of infant" was referred to him for investigation. When he met with defendant, "first shè advised that she didn't know anything about it . . . and then *I explained to her information that I had received. The fact that she was the mother and I pointed out several pieces of informa- tion. . . . She asked me what I wanted and I advised her to—I wanted her to stick to the truth and to admit this thing* and then we could proceed from there." (Emphasis supplied.)

The State's investigation was focused on defendant when the interrogation commenced—the interrogating officer forthrightly told defendant he wanted her confession. No *Miranda* warning was given until after the sought inculpatory statement was ob- tained. Thereafter, only details were asked for and obtained.

The investigating officer and the defendant were the only witnesses at the suppression hearing. Their testimony fully cov- ered the totality of the circumstances surrounding the interroga- tion. It was the decision of the trial judge that the defendant's statements made before and after the giving of the *Miranda* warnings were not freely and voluntarily made, that is, they were not the product of her free and independent will (*State v. Creekmore*, 208 Kan. 933, 934, 495 P.2d 96 [1972]) and her purported waiver of her *Miranda* rights was not knowingly and intelligently made.

From our review of the record on appeal, we cannot conclude that, as a matter of law, the State sustained its burden of proof.

Affirmed.

Upon request under Rule 7.04 (230 Kan. lx), publication of this opinion is ordered.

MEYER, J.: I dissent. I cannot agree with the majority in its affirmance of the trial court's suppression of appellee's statements.

The aforementioned statements should have been admitted, pursuant to K.S.A. 60-460(f), as a confession by the accused. An excellent synopsis of this exception to the hearsay rule, the procedural hurdles to the admission of a confession into evidence, and of appellate review over such evidentiary questions, was provided by Judge Abbott in *State v. Baker,* 4 Kan. App. 2d 340, 342, 606 P.2d 120 (1980); I quote therefrom:

> "To be admissible in evidence as an exception to the hearsay rule under K.S.A. 60-460(f), a confession or extrajudicial statement by an accused must have been freely and voluntarily made. The voluntary nature of a statement must be established by a preponderance of the evidence, and by statute (K.S.A. 22-3215[4]) the burden is on the prosecution to prove the statement is voluntary and admissible. *State v. Kanive,* 221 Kan. 34, 35, 558 P.2d 1075 (1976). Furthermore, when there is a conflict in testimony given by the defendant and that produced by the State as to the voluntary character of a confession, it is to be determined like any other question of fact; and although a finding by the trial court is open to review, it has a much better opportunity to ascertain the truth than that afforded to this court and its conclusion, if supported by substantial competent evidence, cannot be disturbed. *Holt v. State,* 202 Kan. 759, 764-65, 451 P.2d 221 (1969)."

In the case of *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), the United States Supreme Court held that it was a violation of constitutional rights to allow one's conviction to be based, in whole or in part, on an involuntary confession, regardless of its truth or falsity and even though there may be ample proof apart from the confession to support the verdict. It was further held that no statements by the accused could be admitted into evidence unless it was shown that, before being interrogated, the accused had been informed fully of his right to remain silent, his right to the presence of an attorney, and the consequences of his waiver of any of these rights. See 384 U.S. at 444-45.

There are two qualifiers which have steadfastly been applied by courts, post-*Miranda,* to determine whether a statement by the accused, elicited without benefit of the prescribed warnings, is thus automatically rendered involuntary, as a transgression of his privilege against self-incrimination. The first is whether the statement was the product of interrogation or "its functional equivalent." See *Rhode Island v. Innis,* 446 U.S. 291, 64 L.Ed.2d 297, 100 S.Ct. 1682 (1980). Statements which are volunteered by

the accused, without any police prompting, are exempt from the warning requirement of *Miranda.* This first qualifier was met in the instant case; the State concedes that Lt. Miller was interrogating appellee at the time she made her confession.

The second qualifier is not so simply satisfied. To invoke *Miranda,* the statement by the accused must be the product of "custodial interrogation." This term was defined in the *Miranda* opinion itself:

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.

"This is what we meant in *Escobedo* [*v. Illinois,* 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758 (1964)] when we spoke of an investigation which had focused on an accused." 384 U.S. at 444 n. 4.

This definition of "custodial interrogation," the key which triggers *Miranda,* has been repeatedly adopted by scores of jurisdictions. The following quotation indicates that Kansas has joined this legion; it also illustrates the distinction between interrogation which is "custodial" and that which is "investigatory."

" 'A defendant's statements to a police officer are not automatically inadmissible for failure to give him the *Miranda* warning unless the statements are the product of custodial interrogation.' *State v. Edwards,* 224 Kan. 266, Syl. ¶ 1, 579 P.2d 1209 (1978); *State v. Bohanan,* 220 Kan. 121, Syl. ¶ 1, 551 P.2d 828 (1976). In *Bohanan* the Court contrasted a 'custodial interrogation' where the warning is required with an 'investigatory interrogation' where it is not. The latter variety was defined as 'the questioning of persons by law enforcement officers in a routine manner in an investigation which has not reached an accusatory stage and where such persons are not in legal custody or deprived of their freedom of action in any significant way.' *State v. Bohanan,* 220 Kan. at 128. Custodial interrogation on the other hand, requires 'significant restraints on [a subject's] freedom of movement which are imposed by some law enforcement agency.' *State v. Brunner,* 211 Kan. 596, Syl. ¶ 2, 507 P.2d 233 (1973)." *State v. Greenberg,* 4 Kan. App. 2d 403, 404-405, 607 P.2d 530, *rev. denied* 228 Kan. 807 (1980).

See also *State v. Taylor,* 231 Kan. 171, 172-73, 642 P.2d 989 (1982); *State v. Edwards,* 224 Kan. 266, Syl. ¶¶ 1, 2, 579 P.2d 1209 (1978); and *State. v. Frizzell,* 207 Kan. 393, Syl. ¶¶ 1, 2, 485 P.2d 160 (1971).

In *State v. Carson,* 216 Kan. 711, 533 P.2d 1342 (1975), the court detailed several factors useful in determining whether a person has been the subject of custodial interrogation.

"Circumstances bearing on whether a person questioned was subjected to

'custodial interrogation' requiring *Miranda* warnings can be classified under the following general headings: (1) The nature of the interrogator; (2) the nature of the suspect; (3) the time and place of the interrogation; (4) the nature of the interrogation; and (5) the progress of the investigation at the time of interrogation." 216 Kan. 711, Syl. ¶ 5.

Having examined the record before this court, I would offer these observations regarding the chain of events which transpired in this case.

On September 6, 1981, a newborn baby was discovered, abandoned in a field near East 43rd in Hutchinson, Kansas. An investigation was begun; Lt. Robert Miller of the Hutchinson Police Department was placed in charge. On the 8th or 9th of September, Lt. Miller was informed by a member of the Reno County Sheriff's Department that one Nancy Goering was the mother of the child. This information was based upon an anonymous tip. This same unnamed source had also stated that appellee left work early on September 4. Prior to that time, appellee had been wearing very loose-fitting clothing. When she returned to work on September 9 (after the Labor Day holiday), she appeared to have lost much weight and she wore tight-fitting clothing. Lt. Miller investigated further. He learned that appellee lived at 2451 East 43rd Street in Hutchinson, very near the field where the child was found.

Lt. Miller first contacted appellee on September 15, 1981, by telephone. He arranged a meeting, to be held at his office during the lunch hour of the following day. Appellee did not appear at the appointed time. Lt. Miller again phoned appellee, and it was agreed that they would meet on either the 17th or 18th of September, early in the morning. When appellee failed to present herself on either of these occasions, Lt. Miller decided to visit her at her place of employment, the Kline Insurance Agency.

Lt. Miller arrived there at 12:20 p.m., September 18, 1981. He was dressed in plain clothes (a blue three-piece suit), and he was alone. He entered the offices, and inquired of a receptionist where he might find appellee. When appellee appeared, he introduced himself and asked to speak with her; she agreed. He suggested a more private place, and she took him to an office room. The door was closed behind them, but not locked; they sat on opposite sides of the desk.

At this interview, appellee was visibly upset and nervous. She

initially denied having any personal knowledge of the case. Lt. Miller then relayed to appellee the information which he had previously received, information which indicated that she was the mother of the child. He advised her to tell him the truth. She thereupon broke down crying, and admitted that she was the mother of the child. Lt. Miller tried to comfort and solace her. He also then advised her fully of her *Miranda* rights. She indicated that she understood those rights and that she would go ahead and talk with him. Further discussion was had, and only then were the details of how the baby got into the field revealed. At no time during this interview did appellee request the presence of an attorney; nor did she assert her right to remain silent. She was never physically restrained, nor was she verbally told that she was under any arrest. Lt. Miller stated that, in his mind, appellee could have refused to speak further at any time, and he would have then left the premises.

The trial court concluded that Lt. Miller's questioning of appellee was "custodial interrogation." The trial judge stated: "The Court concludes that the defendant was deprived of her freedom of action in a significant way because she could not leave."

From this conclusion, the trial court reasoned that appellee's admission that she was the mother of the child was not admissible, for she had not been apprised of her *Miranda* rights prior to making that statement.

Whether a situation is "custodial" is a question of law, to be determined on the basis of the particular circumstances of each case. Many states have rejected a subjective test on this question, in favor of an objective, or "reasonable man" standard. Kansas is one of these states.

" 'A person's subjective belief or feelings are not controlling on the question as to whether he was under arrest at a particular time, although it is a factor to be considered, and the test is what a reasonable man, innocent of any crime, would have thought had he been in the same position.' " *State v. Williams,* 4 Kan. App. 2d 651, 654-55, 610 P.2d 111 (1980), citing 6A C.J.S., Arrest § 43, pp. 100-101.

And see the extended discussion of what constitutes an arrest in *State v. Williams,* 4 Kan. App. 2d at 654-56.

The trial court's conclusion that the interrogation culminating in appellee's admission of maternity was custodial is patently erroneous. No reasonable person, in appellee's position, could

have concluded that they were under arrest. Appellee was interviewed in a polite fashion by an officer in plain clothes at her own place of employment. She was a suspect at that time, but not an accused; it was not until after this interview that the investigation reached the accusatory stage. Applying the factors from *State v. Carson,* 216 Kan. 711, I conclude there is absolutely no evidence to support a finding of custody under the objective standard.

Additionally, in her own testimony, appellee admitted that she personally felt under no compulsion to speak, but could have refused to answer Lt. Miller's questions. She also indicated that she could have asked Lt. Miller to leave, or could have left the room herself, at any time. Thus, even applying a subjective standard, no custody is evident. The trial court's conclusion to the contrary is clearly erroneous, and should be reversed as a matter of law.

The majority opinion lays much emphasis on its assertion that the investigation had "focused" on appellee prior to her questioning at the hands of Lt. Miller. This emphasis is undue; the scope of the investigation's focus, be it broad or narrow, is not determinative of whether interrogation was custodial.

"The fact a suspect is the focus of an investigation, standing alone, does not trigger the need for a *Miranda* warning, but it may be one of the determinative factors in arriving at a decision whether such a warning is needed. *State v. Edwards,* 224 Kan. at 269; *State v. Bohanan,* 220 Kan. at 129; *State v. Carson,* 216 Kan. at 715." *State v. Costa,* 228 Kan. 308, 312, 613 P.2d 1359 (1980).

Furthermore, I must take issue with the assertion that the investigation had indeed focused on appellee prior to her admission of maternity. Quite plainly, appellee was a suspect in the case. But the scanty information, from an anonymous source, which was known to Lt. Miller prior to his interview with appellee fell far short of being the sufficient objective facts necessary to support the probable cause requirement for the issuance of an arrest warrant. It was only after appellee's admission of her parentage that the investigation truly focused on her; only then did the investigation become accusatory, and the further interrogation become custodial. It was not until after this admission that appellee became entitled to be informed of her rights under *Miranda,* and that was precisely Lt. Miller's course of action.

The majority also stresses the fact that Lt. Miller questioned appellee with the intent of extracting incriminating statements, as exemplified by citations to his testimony, where he related that he told appellee to "stick to the truth and to admit this thing." The general rule is that a mere admonition or exhortation to speak the truth, or advice to confess, which does not itself import either a threat or benefit, is not sufficient to render a confession involuntary. See *State v. Kornstett,* 62 Kan. 221, 227, 61 Pac. 805 (1900). Accord, 29 Am. Jur. 2d, Evidence § 548. As the actions and statements of Lt. Miller clearly fall within this rule, the majority's reliance thereon is misplaced.

There is another reason why appellee's admission was not subject to *Miranda.* The admission of maternity, standing alone, is not incriminating. It is a link in a chain of circumstances, but by itself, it does not prove guilt or innocence. Being neither inculpatory or exculpatory, it is not within the purview of *Miranda,* and therefore no warnings were required prior to the making of said admission.

For the foregoing reasons, I firmly believe that the trial court's suppression of appellee's admission that she was the mother of the child was error. Another point is then confronted: whether the trial court was correct in also suppressing the statements made by appellee after she had admitted her maternity, and after she had been advised of her rights as per *Miranda.* These statements, detailing how the child came to be alone in a vacant lot, were truly a confession, being most incriminating. In this respect they differ from the mere admission of maternity which preceded them. This confession was made after she had been fully advised of her rights under *Miranda,* and after she had indicated both that she understood those rights and that she chose to speak freely with Lt. Miller. The trial court nevertheless ruled to suppress such statements. The trial judge said:

"The next issue is whether the defendant knowingly and intelligently waived her rights so as to make subsequent statements admissible. The warnings were given while Lt. Miller was comforting the crying defendant. From the evidence the Court cannot find that the defendant made a knowing and intelligent waiver. The defendant had broken down and commenced crying. She had no opportunity to make an intelligent decision to waive her right to remain silent."

In *State v. Newfield,* 229 Kan. 347, 623 P.2d 1349 (1981), the court stated as follows:

"The general rules relating to the voluntariness of confessions and *Miranda* waivers are as follows: Uncoerced statements made to police officers by a defendant who has been given warning as to his constitutional rights are admissible as evidence at his trial. *State v. Higdon,* 224 Kan. 720, 722, 585 P.2d 1048 (1978). In determining the voluntariness of a confession, it is to be viewed in light of the totality of circumstances, including the following factors: (1) The duration and manner of interrogation; (2) the accused's ability upon request to communicate with the outside world; (3) the accused's age, intellect and background; and (4) the fairness of the officers in conducting the interrogation. Essential to the inquiry is the determination that the statement was the product of the free and independent will of the accused. If the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary. *State v. Prince,* 227 Kan. 137, 144, 605 P.2d 563 (1980); *State v. Watkins,* 219 Kan. 81, 97, 547 P.2d 810 (1976); *State v. Creekmore,* 208 Kan. at 934 [, 495 P.2d 96 (1972)]." 229 Kan. at 356-57.

*State v. Newfield* differs from the instant case in one important respect. In *Newfield,* the issue was whether defendant had waived his right to counsel after he had requested the presence of same. As a corollary to this issue was the question whether police interrogation had ceased after defendant asserted his right to counsel, until such time as he later waived that right. Appellee herein never requested to have an attorney present, so the issue is only whether she waived that right in the first instance, without ever asserting it. Notwithstanding this factual difference, the test and factors listed in *Newfield* provide the proper yardstick for measuring "voluntariness" in the instant case.

It clearly appears to me that appellee's display of emotion during her confession was the sole factor in the trial court's finding that appellee was in no mental state to make a voluntary and intelligent waiver of her right to remain silent. Being a finding of fact, I would be loathe to disturb it were there any competent evidence in the record to support it. But, applying the factors of *Newfield* to the totality of the circumstances, I do not hesitate to state that it is possible to arrive at only one conclusion in this case—appellee freely and voluntarily made a confession.

The confession here involved was not the product of protracted interrogation under oppressive conditions; appellee answered every question that was put to her by Lt. Miller. There is absolutely no evidence to indicate that Lt. Miller was anything other than a perfect gentleman throughout the interview. Nor is there any evidence showing any sort of trickery, deception or other ploys on Lt. Miller's part. The interview took place in a

friendly setting, and at appellee's own place of employment.

Appellee is an adult woman, twenty-one years of age. She possessed a high school education, and an Associate of Arts degree from an accredited Kansas junior college. She was employed, doing clerical work for an insurance firm. She stated that she had no inordinate fear of police officers; in fact, her uncle is a captain with the Hutchinson Police Department. Appellee was in no way held incommunicado. Every indication is that her freedom to communicate with anyone else would have been scrupulously honored; the same is true of her right to remain silent. The fact is that appellee never requested the presence of an attorney. She did request to speak with her uncle, Captain Goering; this request was promptly granted.

Appellee admitted that she was not threatened or otherwise coerced into speaking. Neither were any promises made to her, nor benefits offered in exchange for her statement. In short, nothing said or done by Lt. Miller reduced, even slightly, appellee's ability to admit, deny or remain silent. The only compulsion to speak came from within appellee herself—from her own conscience. *Miranda* was never meant to protect one from oneself.

The fact appellee became emotional during her confession does not make that confession any less the product of her own free will. Guilt and remorse must burden all but the most hardened of criminals. The close personal relationships involved in the crime charged herein make it a uniquely emotional situation. But to hold that a release of emotion by a confessing suspect taints that confession would be an inappropriate extension of *Miranda*. This would allow the admissibility of a confession to be influenced by how distraught the suspect had become due only to his own guilty conscience. More distressing yet, it could also allow the admissibility of a confession to be determined by how competent an actor or actress the suspect was. The spontaneous release of natural emotions should not become the basis for a finding that a confession was involuntarily made.

To summarize, Lt. Miller conducted his investigation, including his interrogation of appellee, with the utmost fairness. His actions complied with the dictates of *Miranda*, both in letter and in spirit. No evidence exists to support the trial court's finding that appellee's statements were involuntarily made.

348

In affirming the trial court's suppression order, the majority today sets a dangerous precedent. I am therefore compelled to respectfully voice my strong disapproval in this dissent.