THE STATE OF KANSAS v. CHARLES BOGUE.

1. HOMICIDE — *Declarations of Accessory.* K. and B. were jointly charged by information with the crime of manslaughter, and separate trials were demanded. On the trial of B., there was evidence tending to show that K. was principal and B. accessory before the fact in the commission of the offense. *Held,* That evidence of declarations made by K. in the absence of B., long after the consummation of the alleged criminal acts, was inadmissible.

2. CODEFENDANT — *Competent Witness.* Where two persons are charged as principals in the commission of a felony, and at their request separate trials are had before the conviction of either, one defendant is a competent witness for the other.

3. BAR — *Acquittal of Codefendant.* On the trial of B., who is jointly charged with K. with the crime of manslaughter, the evidence tended to show that K. was guilty as principal, and B. as accessory before the fact. *Held,* That the acquittal of K. is not a bar to a prosecution against B. under the information.

*Appeal from Ellis District Court.*

THE defendant and one Nathaniel Kidd were jointly charged by information in 16 counts with the crime of manslaughter in the first degree. A separate trial was demanded. The defendant was convicted on the thirteenth count, and sentenced to 15 years in the penitentiary. Afterward, and at the same term of court, Kidd was tried and acquitted. The crime with which Bogue and Kidd were charged was causing the death of Pauline Sweitzer, by the use of instruments and the administration of certain drugs, for the purpose of procuring an abortion. The verdict was rendered on the 21st day

of January, 1893.    On the same day, a motion was filed for
a new trial, upon the following grounds:

"1.  Because the court erred in permitting illegal testimony
to be given to the jury herein over the objections of the de-
fendant.

"2.  The verdict has been decided by means other than a
fair expression of opinion on the part of all the jurors.

"3.  The court misdirected the jury in material matters of
law, over the objections of the defendant, which were duly
excepted to by him at the time.

"4.  The verdict is contrary to law and evidence."

This motion was heard and overruled, and on the same day
that the verdict was rendered the defendant was sentenced.
Afterward, on the 30th day of January, counsel who appear
here came into the case, and another motion for a new trial
was filed, alleging, among other grounds, the rejection of
legal testimony offered by the defendant, and setting up vari-
ous matters as an excuse for the failure of defendant's counsel
to include certain grounds in his first motion for a new trial.
On this motion, testimony was introduced, and the motion
was overruled by the court.    Afterward, on the 15th day of
March, 1893, at an adjourned session of the same term of
court, a further motion was filed by the defendant, alleging
that Nathaniel Kidd was charged as principal in the crime,
and Bogue as accessory; that since the conviction of Bogue,
Kidd had been tried and acquitted, and asking the court, for
that and other reasons stated in the motion, to set aside the
judgment.    On the hearing of this motion, the journal entry,
showing the trial and acquittal of Kidd on the 7th of Febru-
ary, 1893, was introduced in evidence.    This motion was
also overruled.    On the trial, H. B. Kohl, the coroner, who
had held an inquest on the body of Pauline Sweitzer, testified,
over the objection of the defendant, as follows:

"Ques.  Now, did Doctor Kidd come before that coroner's
inquest?    Ans.  He came there.   He was a voluntary witness,
not on a subpœna.

"Q.  What happened after he got there?   What was said?
State all that was said.    A.  Doctor Kidd was asked what

Pauline Sweitzer died of; his answer was, first, of heart failure. One of the jurors, M. M. Fuller, asked the doctor, 'What did you do for that? What did she die with? What was the cause of her death?' He says, 'Heart failure.' 'Did you give her medicine?' Fuller asked —— which I do believe —— I do n't know —— the court may censure me ——

"Q. What did he say to that? A. He says, 'Yes, sir; I gave her some medicine.' The juror asked, 'What did you give her?' He says, 'Antipyrine, antikamnia, subnitrate of bismuth, sulphate of morphia, sulphate of quinine, phenacitine.' At the time that ——

"Q. Did Doctor Kidd say anything else at that time? A. Yes, sir.

"Q. What was it? A. He said that he had been called the day before, and that Pauline was troubled with heart failure, and that on arriving there he found she had inflammation of what he called the stomach.

"Q. Which he called inflammation of the stomach — was that all? A. He says he was there only twice, and that he could not do very much for her.

"Q. Anything else? A. He said her heart failed to act, and he was there in the morning, and found Pauline very low. No more questions were asked Doctor Kidd after that."

The defendant was not present at the time these statements were made by Doctor Kidd, and the admission of all this testimony was duly excepted to. The defendant afterward offered Doctor Kidd as a witness in his behalf, but his testimony was excluded, on the ground that he was incompetent to testify. *Bogue* appeals.

*J. G. Mohler,* for appellant :

The court materially erred in refusing to permit appellant's codefendant, Nathaniel Kidd, to testify as a witness in his behalf. *The State v. Sterns,* 28 Kas. 158, 159; *Moffit v. The State,* 2 Humph. 99; *Jones v. The State,* 1 Kelly (Ga.), 610; *United States v. Henry,* 4 Wash. Cir. Ct. 428; *Garrett v. The State,* 6 Mo. 1; *The State v. Ohio Chiagk,* 92 id. 395, 409; *Noland v. The State,* 19 Ohio, 131, 134; *Allen v. The State,* 10 Ohio St. 287, 303.

"A witness is clearly competent, although he may be

charged with the same offense in a spearate indictment."
*Noland v. The State*, 19 Ohio, 134; 1 Greenl. Ev., § 379.

Death is not the "ordinary and natural consequence" of an abortion, and appellant should not be held responsible for it, as he administered no drugs or medicines to, nor used any instruments on, Pauline Sweitzer to produce an abortion. *Commonwealth v. Adams*, 127 Mass. 15; *Rufer v. The State*, 25 Ohio St. 464, 473.

The court below also erred in permitting the state to prove by the witness Belle Healey statements made to her by Doctor Kidd, after the death of Pauline Sweitzer, not in the presence of appellant. *Rufer v. The State*, 25 Ohio St. 471–476.

We claim that the court erred in overruling defendant's motions to set aside and vacate judgment and sentence, etc., in the nature of a writ of error *coram vobis*. That the court could and should entertain these motions, and that the practice is proper, we cite the following authorities: *The State v. Hughes*, 35 Kas. 626, 632, 633; *The State, ex rel., v. Sowders,* 42 id. 312; *Chinn v. Bretches*, 42 id. 316, 318; 1 Bish. Cr. Pro., §§ 1298, 1342; *The King v. Price*, 6 East, 323; *Huntington v. Finch*, 3 Ohio St. 447; *McCarty v. The State*, 44 Ind. 214, 217.

Can there be an accessory before the fact without a principal? If not, then, so far as the accessory is concerned, it is in the nature of a joint offense, in which *he* cannot be guilty except his codefendant be guilty. The acquittal of the principal, Kidd, requires the acquittal and discharge of the accessory before the fact, Bogue. *Ohio v. Foy & McLaughlin*, Tappan's Rep. 103; *The State v. Bain*, 112 Ind. 335; *Delaney v. The People*, 10 Mich. 241; *Baumer v. The State*, 49 Ind. 544; *Bowen v. The State*, 6 So. Rep. 459; *McCarty v. The State*, 44 Ind. 214. The last-cited case is almost "on all fours" with the case at bar. See, also, Gen. Stat. of 1889, ch. 119, § 3; *Ogden v. The State*, 12 Wis. 533.

In the case in hand, while the accessory was finally convicted and sentenced before the acquittal of the principal, yet "the term of the court had not passed at which judgment was

rendered against him, and the court had the common authority to set it aside," and should have done so on the motion and showing of the appellant, and its refusal to do so is reversible error. *The State v. Ricker*, 29 Me. 84; *Pettes v. Commonwealth*, 126 Mass. 242; *People v. Gray*, 25 Wend. 465; *Holmes v. Commonwealth*, 25 Pa. St. 221; *Ulmer v. The State*, 14 Ind. 52; *Baxter v. People*, 3 Gilm. 368; *Yoe v. People*, 49 Ill. 410; *The State v. Comstock*, 46 Iowa, 265.

*John T. Little*, attorney general, *Wm. L. Aaron*, county attorney, and *Chas. A. Hiller*, for The State:

It will be admitted that, if Kidd and Bogue had been jointly tried as charged in the information, and had not claimed the benefit of separate trials, which entailed consequent disadvantages on the prosecution, each could have testified for himself, and thus incidentally for each other.

The Georgia case of *Jones v. The State*, 1 Kelly, 610, overlooks the distinction between accomplices jointly indicted and those either separately indicted or not indicted at all, and is contrary to the great weight of authority.

The decision in *Noland v. The State*, 19 Ohio, 134, is an *obiter dictum*, and the other cases against our position were decided upon statutes and legislation entirely different from our own.

Doctor Kidd was not the defendant on trial or examination, nor the husband or wife of such defendant, and hence, under the old rule at common law, his testimony was properly rejected. 1 Greenl. Ev., § 362, p. 363, and cases cited; 1 Bish. Crim. Proc., § 1020, and cases cited.

With regard to the statements of Kidd to Belle Healey, we remark that no exception was preserved by the defendant to the admission of this evidence.

Counsel for the appellant has faithfully and laboriously gathered a number of decisions to show that the court could have set aside the judgment during the term and granted a new trial. We do not dispute the proposition, so ably presented, that while the judgment is *in fieri*, or, as Lord Coke

expresses it, "in the breast of the judges," the court may set it aside. But the cases, while admitting the power, all recognize the fact that this is a matter of discretion upon which no error will lie, except those cases where the rule formerly in vogue as to the principal and accessory applies. The refusal of the trial court to exercise its admitted power shows that, in its opinion, the verdict was just and right.

Counsel urges with much force that the appellant is merely an accessory, and must be discharged, because Kidd, the principal, was acquitted. He proceeds upon the assumption that the abortion was procured entirely by the use of instruments, ignoring the effects of the drugs and the finding of the jury that the abortion resulted from the use of both drugs and instruments. *McCarty v. The State*, 44 Ind. 217, is relied upon to support this view; but the statute in that case only provided for the punishment to be the same, and does not appear to declare that the accessory shall be charged, tried and convicted as if he were a principal.

The section defining the crime charged specifies that the death must result from the attempt or perpetration of a crime or misdemeanor not amounting to a felony. It is an undisputed rule of the criminal law that all are principals in misdemeanors, and the old rules and distinctions regarding accomplices and accessories are not applicable at all. *The State v. Gannett*, 79 Am. Dec. 693.

The opinion of the court was delivered by

ALLEN, J.: We think the refusal of the court to permit Doctor Kidd to testify as a witness for the defendant was manifestly erroneous. (*Noland v. The State*, 19 Ohio, 131.) The distinction sought to be drawn between cases where defendants jointly indicted are jointly tried and those where they are separately tried has no foundation in reason, nor do we think that it has any sanction in law. We also think § 210 of the criminal code authorizes the granting of new trials for like causes as in civil cases, and that § 275 in no way prejudices the defendant's rights in that particular. But the rul-

ing of the court in this respect, though most prejudicial to the substantial rights of the defendant, is not properly before us for review, because not included in the only motion for a new trial which was filed within the time required by law.

The admission of the declarations of Doctor Kidd before the coroner's jury, in the absence of the defendant, was error. Whatever might be said in favor of the admissibilty of such testimony under the common-law practice, where one is indicted as principal and another as accessory, in this state, where accessories before the fact are charged and tried as principals, and where defendants are permitted to testify in their own behalf, we think the reason, if any there might be, for the admission of such testimony, fails. We, of course, are not here considering declarations of co-conspirators, or of persons engaged in a common criminal enterprise before or during the perpetration of their crime, but declarations of one of two defendants, jointly charged as principals, made long after the offense, if any, was consummated. We are clearly of the opinion that the testimony was inadmissible. ( 1 Whar. Crim. Law, 8th ed., § 237; *Ogden v. The State,* 12 Wis. 532.)

*1. Homicide— declarations of accessory.*

Was it so material as to require a reversal? The theory of the prosecution was that the defendant had seduced the deceased girl, and that she was pregnant by him; that he employed Kidd, who was a doctor, to procure an abortion; that Kidd used instruments and administered drugs, and thereby did produce an abortion, and did also cause the death of Pauline Sweitzer. Under this theory, which was followed throughout the trial and in the instructions of the court, the guilt of Bogue was necessarily dependent on that of Kidd. If the theory of the prosecution was true, Doctor Kidd was guilty of procuring an abortion, not of doctoring a girl who had inflammation of the stomach. The information charged that he administered aloine, ergot, ergotine, sulphate of morphia, subnitrate of bismuth, and other noxious and abortifacient drugs. The chemist who analyzed the stomach, etc., of the deceased girl, testified to the discovery of aloine, ergo-

The State v. Bogue.

tine, and subnitrate of bismuth. If the theory of the prosecution was true, and the result of the chemist's analysis is correct, Doctor Kidd's statements before the coroner's jury were false, and the jury would naturally, almost necessarily, have inferred that Doctor Kidd made false statements before the coroner's jury for the purpose of misleading them and concealing his crime. It cannot be said that this testimony was unimportant. It appears to us that it might have been, and probably was, highly prejudicial to the defendant. If the jury was convinced that Doctor Kidd made these statements, and that they were false, they would much more readily attribute guilt to him than if no such statements had been made. These and other statements of Doctor Kidd, made after the death of Pauline Sweitzer, were testified to by several witnesses. We think this error for which a new trial must be awarded, and its gravity is much increased by

2. Codefendant— competent witness.

the refusal of the court to permit Doctor Kidd to testify as a witness. If Doctor Kidd was guilty, there is abundant evidence in the record to connect the defendant with the crime.

It is contended that the subsequent acquittal of Doctor Kidd compels the vacation of the judgment against the defendant, and his discharge from further prosecution. It may be conceded that, at common law, the acquittal of the principal acquitted the accessory also, and that the conviction of the principal must precede or accompany that of one charged as an accessory. (1 Whar., § 237; 1 Bish. New Crim. Law, § 667.) Section 115 of the criminal code provides: "Any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were principal." The evident purpose of the legislature of our own and other states where similar statutes have been enacted was, to do away with those subtle distinctions of the common law between principals in the first and second degree and accessories before the fact, and to permit the trial of participants in the crime independently of each other, so that each should suffer punishment for his own guilt,

without being dependent on the result of the prosecutions against others. Of course, if the crime be committed through the instrumentality of another, the acts of such instrument, essential to establish the guilt of the person on trial, must be shown. The statute does not in any manner enlarge or diminish the essential elements of criminality. It merely does away with a somewhat arbitrary nomenclature which has come down from English jurisprudence, and has been found to be a serious stumbling-block in the administration of criminal justice.

We think a guilty accessory may be punished, even though the principal escape. As was said in *The State v. Mosley*, 31 Kas. 355, a record showing the conviction of the principal is *prima facie* evidence of that fact, but is not conclusive of it on the trial of the accessory. We think our view of the law on this branch of the case is fully sustained by the decisions of those states having statutory provisions similar to our own. (*Noland v. The State*, supra; *Hanoff v. The State*, 37 Ohio St. 178; *Goins v. The State*, 46 id. 457; *The State v. Phillips*, 24 Mo. 475; *The State v. Ross*, 29 id. 32.) The provision of the Indiana statute quoted in the case of *McCarty v. The State*, 44 Ind. 214, is different from ours.

We have said so much with reference to a prosecution of the defendant as though he were but an accessory. He stands charged, however, as principal, and being so charged, of course, the mere fact of the acquittal of his codefendant could not, *ipso facto*, entitle him to a discharge.

3. Bar—acquittal of codefendant.

Judgment is reversed and a new trial awarded.

All the Justices concurring.