**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Edward BLASSICK, Defendant-Appellant.**

**No. 16977.**

United States Court of Appeals, Seventh Circuit.

Feb. 10, 1970.

Rehearing Denied March 5, 1970.

Leo I. Fox, Chicago, Ill., for appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for appellee.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendant Richard Edward Blassick was convicted on one count of assault with a dangerous weapon during the commission of a bank robbery, in violation of 18 U.S.C.A. § 2113(d),[1] following a trial by jury. He appeals from the judgment of conviction and sentence. We affirm.

On May 24, 1967, at approximately 1:00 p. m., the Griffith, Indiana office of the Mercantile National Bank of Hammond, Indiana was robbed of $34,954.00 by two men wearing owl-type sunglasses and carrying guns.

On October 12, 1967, defendant was arrested on a charge unrelated to the instant case. The arrest took place on the third floor of the apartment building where defendant resided. The arresting officer took a key from defendant which fit a basement storage locker and searched the locker without a warrant. He recovered a gun and two pairs of sunglasses.

On February 13, 1968, defendant Blassick, John Ondo and Philip Cunha were indicted for the Griffith bank robbery. Cunha pleaded guilty. Blassick and Ondo were tried together.

At the trial, defendant was identified by several officers and employees of the bank as one of the men who robbed it. The identifications were, in a number of instances, less than positive.

John Czapla, who was then serving a sentence for illegal check cashing, testified at the trial that co-defendant Ondo had told him in May, 1967, that he, Cunha and "a couple of other people" were involved in the Griffith bank robbery. He further testified that in October, 1967, a man he identified as defendant Blassick told him that "Cunha and Ondo himself and somebody else had done it."

Cunha testified that he had pleaded guilty and that Ondo and Blassick had participated in the Griffith robbery with him. He denied that he expected any consideration for testifying.

Ramond Stratton, a Special Agent for the FBI, testified that on February 7, 1968, defendant Blassick had in his possession a receipt indicating he had paid $2,745.60 cash for a car on June 15, 1967. Stratton further testified that on February 8, 1968, Blassick told him he had not been employed for over a year.

Co-defendant Ondo testified in his own behalf and denied that he had participated in the Griffith robbery.

1. "§ 2113. Bank robbery and incidental crimes

\* \* \* \* \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

Hollis Pruitt, a Rockford, Illinois businessman, testified Blassick was with him in Rockford on May 24, 1967, the day of the robbery, seeking employment. He testified that he saw Blassick at about 9:00 a. m., took him to another business at about 10:00 a. m., and then had lunch with Blassick and another Rockford businessman, Gilbert Spears, at about 12:30 p. m.

Spears testified that he had met with Pruitt and Blassick in Rockford on May 24, 1967. However, he admitted that Pruitt had told him the date and that he had no independent recollection of it.

To rebut this alibi evidence, the Government called Special Agent Stratton who testified that on November 14, 1967, he called Blassick to his Chicago office and asked him whether he was acquainted with certain persons whose photographs were shown to him. Stratton testified that Blassick denied knowing Hollis Pruitt and Gilbert Spears. Stratton filed no report of this meeting.

In his closing argument, counsel for defendant Blassick stated: "Three people allegedly did this, one person denied it, Mr. Cunha.[2] Ladies and Gentlemen, two people denied it, Ondo did also." Defense counsel, then delivered, by his own admission, an "inflammatory" attack on the veracity of the Government's witnesses, particularly Special Agent Stratton, saying in effect that he had concocted his story.

On rebuttal argument, the Assistant United States Attorney stated: "In effect they are saying that Mr. Stratton, who had been an F.B.I. Agent for 20 years, concocted that story. Did Blassick deny it? Did anyone deny it?"

The jury found both Blassick and Ondo guilty. Blassick now urges several reasons why his conviction "must" be reversed.

█ Defendant first argues that the statement "Did Blassick deny it?", made by the Assistant United States Attorney during his rebuttal argument,

was impermissible comment on defendant's failure to testify and requires a reversal. It is, of course, clear that it is improper to comment on a criminal defendant's exercise of his right not to testify. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). But it is equally clear that not every constitutional error requires reversal. Chapman v. California, 386 U.S. 18, 21–22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Under *Chapman*, a federal constitutional error is harmless when a reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. We find that standard met in the instant case.

Before the prosecutor made the statement "Did Blassick deny it?", Blassick's own counsel had indirectly referred to his failure to testify. During his argument he referred to the fact that both of the other defendants had been on the stand. He thus highlighted what the jury already must have realized—that Blassick did not take the stand.

Furthermore, this comment by the prosecutor was clearly related to defense counsel's attack on Special Agent Stratton's veracity. It was merely incidental, and in the context of the argument as it unfolded before the jury, this comment does not even begin to approach the "extensive argument asking the jury to overlook inferences favorable to petitioner because he invoked his constitutional right not to testify" which was condemned in Anderson v. Nelson, 390 U.S. 523, 525, 88 S.Ct. 1133, 1135, 20 L.Ed.2d 81 (1968).

Finally, the impropriety was corrected by the trial court immediately after it occurred and again in its final instructions to the jury. We believe such instructions would not be ineffective in the context of this case.

Thus we conclude that it is clear beyond a reasonable doubt that the com-

---

**2.** It is to be noted that Cunha did not deny the charge. He pleaded guilty to it and so testified.

ment complained of did not influence the jury's verdict in this case.

Defendant next contends that the admission of Czapla's testimony to the effect that co-defendant Ondo admitted to him that he had robbed the bank with "a couple of other people" denied defendant Blassick his Sixth Amendment right to confront witnesses against him. He relies upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We find no merit in this contention for the reason that the alleged statements of Ondo in no way inculpated Blassick. They did not even mention him. Only Cunha was referred to by name.

Defendant also urges that his Fourth Amendment rights were violated by the search, without a warrant, of the basement storage locker incident to his arrest on the third floor.

Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), strictly limits the scope of a search incident to an arrest. However, that case has been denied retroactivity by three United States Courts of Appeal and by the Supreme Court of California. United States v. Bennett, 2 Cir., 415 F.2d 1113 (1969); Lyon v. United States, 5 Cir., 416 F.2d 91 (1969); Williams v. United States, 9 Cir., 418 F.2d 159 (1969); and People v. Edwards, Cal., 80 Cal.Rptr. 633, 458 P.2d 713 (1969). For the reasons stated in those opinions, we agree that Chimel does not meet the tests of retroactivity outlined in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

Thus we must test the reasonableness of the instant search on the basis of the law as it was prior to Chimel. Under United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), the rule was that the reasonableness of the search did not depend on the practicability of obtaining a search warrant. A search incident to a lawful arrest could reasonably extend to any area considered to be in the "possession" or under the "control" of the person arrested. Chimel v. California, 395 U.S. at 760, 89 S.Ct. 2034.

The Rabinowitz standard was complied with in the instant case. The defendant had in his possession a key to the locker which indicated his right to control it. It was not unreasonable for the arresting officers to believe that the locker would be a likely place for the defendant to have hidden instruments or fruits of his crime. See United States v. Francolino, 2 Cir., 367 F.2d 1013, 1017 (1966), cert. den., 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967).

Defendant next contends that the trial court improperly denied him a continuance on the morning the case was set for trial. Defendant's counsel sought the continuance on the ground that he had been retained only two days before and that the file he received from the public defender showed little preparation. The trial court heard extensive argument on this motion (covering 24 pages in the transcript) and, in the exercise of its discretion, denied it. On our consideration of the relevant parts of the record and based on answers given to our questions asked at oral argument, we cannot say that in so ruling the trial court abused its discretion.

Finally, defendant contends that the jury should have been informed of the fact that Cunha was given a reduction in his sentence after testifying in the instant case. Defendant's difficulty here is that the reduction was not granted until sixty days after the trial of the instant case and occurred in a different district. The Government on oral argument informed us that this reduction was neither promised nor sought by it. Under these circumstances, we do not see how it could have informed the jury of the reduction in the instant action.

Mr. Leo I. Fox, a member of the Chicago Bar, was defendant's privately employed attorney at the trial below. Pursuant to the Criminal Justice Act of 1964, we appointed Mr. Fox as defend-

ant's attorney on this appeal. We appreciate such service here.

The judgment of conviction and sentence is affirmed.

Affirmed.