No. 51,704

STATE OF KANSAS, *Appellee,* v. MILTON PORTER, WILLIAM GREEN, and VERNON SMITH, *Appellants.*

(615 P.2d 146)

Opinion filed July 18, 1980.

*Donald E. Bucher,* of Kansas City, argued the cause and was on the brief for appellants Milton Porter and William Green.

*Joseph P. Perry,* of Bonner Springs, argued the cause and was on the brief for appellant Vernon Smith.

*Philip L. Sieve,* chief deputy district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is a consolidated appeal from a jury verdict finding appellants, Milton Porter, William Green and Vernon Smith, each guilty of two counts of aggravated robbery (K.S.A. 21-3427).

On the 23rd day of April, 1979, two black men entered an APCO service station in Kansas City, Kansas, and robbed two station attendants at gunpoint. During the time that the robbery was taking place, Wendell Kilian, a security manager for Sears, Roebuck & Co., was leaving the Sears store which is located approximately fifty yards from the APCO station. Kilian noticed in the parking lot a blue car which was occupied by two black males who were looking in the direction of the APCO station. The motor of the car was running. Kilian became suspicious and drove past the car twice, noting the license tag number. He then observed two black males run from the station and get into the blue car which departed from the Sears lot at an unusually high rate of speed. Shortly thereafter a police officer saw the car run a stop sign and the officer turned on his emergency lights in an attempt to stop the car, which sped away. A high speed chase ensued ending when the car hit a telephone pole. Two men riding in the car jumped out and ran from the scene. Police from a backup car chased these two through a residential area and eventually arrested Milton Porter who was found hiding under a parked car. Smith, the driver of the car, and Green, a passenger, were arrested at the crash site. The fourth individual has not been identified or apprehended as far as we know.

The three defendants were arraigned on June 8, 1979, and trial began on September 10, 1979. Green and Porter were represented by Richard Keithley and Smith by Gerald Jeserich. All three were tried together and all three have appealed, alleging various points on appeal.

The first and major point on appeal by Porter and Smith is that the trial court erred in admitting codefendant Green's extrajudi-

cial statements into evidence. Since Green did not testify Porter and Smith contend that their Sixth Amendment right of confrontation was violated and further contend that the failure of the trial court to give a limiting or cautionary instruction to the effect that Green's statement could not be considered as evidence against Smith and Porter is reversible error.

Green's oral statement was introduced through the testimony of Sergeant Clyde Blood of the Kansas City, Kansas, Police Department. His testimony follows:

"Q. What happened then after Mr. Green here indicated that he did understand his rights. Did he indicate at that point whether he talked to you about the APCO robbery?

"A. Well, after he signed his rights, he indicated that he was involved in the robbery of the APCO station with three other parties.

"Q. Okay. Did he indicate to you how this robbery came to pass?

"A. Well, he had met—he was with two parties and met another party at a Kentucky Fried Chicken store at 36th, I believe, and State Avenue. At that time they discussed the robbery of the APCO station."

At this point the proceedings were interrupted and both defense counsel renewed their objections, which had been made earlier at an in camera hearing held to determine the admissibility of the statement. The objections were overruled and the testimony continued.

"Q. (By Mr. Sieve) Sergeant, you were to a point there where you said that the Defendant Green said he had gotten together with three other people and I think you said they were planning this robbery. Go ahead then with what Mr. Green told you?

"A. Well, they discussed the robbery while they were at the Kentucky Fried Chicken Store. One of the parties supplied one or two hand guns. I don't recollect I think it was two. They were both, I believe, revolvers. They proceeded in a motor vehicle to the area of Sears and Roebuck where they parked the vehicle in a lot adjacent to the Sears and Roebuck Store. At that time Mr. Green and another accomplice walked to the APCO Station and the robbery was executed and they left the area and returned to the Sears lot and got into the car and left.

"Q. Okay. And did he indicate to you what happened to him shortly thereafter leaving the Sears lot?

"A. Well, they were engaged in a short pursuit with uniformed police vehicles and apprehended, but I didn't—don't recollect the details of that pursuit or apprehension."

Defendants' objection to the admission of this evidence is based on the decision of the United States Supreme Court in *Bruton v. United States*, 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968). The rule of *Bruton* is well recognized by this court

and was summarized in *State v. Mims,* 220 Kan. 726, 732-33, 556 P.2d 387 (1976), as follows:

"In *Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620, the United States Supreme Court held that an accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated where a codefendant does not testify and his extra-judicial confession inculpating the accused is admitted into evidence, notwithstanding jury instructions that the codefendant's confession must be disregarded in determining the accused's guilt or innocence. In *Bruton* the United States Supreme Court stated that under the traditional rules of evidence, a codefendant's confession inculpating the accused is inadmissible against the accused as hearsay and that the major reason underlying the confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses. The rule of *Bruton* has been well recognized by this court. (*State v. Greer,* 202 Kan. 212, 447 P.2d 837; *Cantrell v. State,* 206 Kan. 323, 478 P.2d 192; *State v. Oliphant,* 210 Kan. 451, 502 P.2d 626.)"

See also *State v. Rodriquez,* 226 Kan. 558, 601 P.2d 686 (1979); *State v. White & Stewart,* 225 Kan. 87, 587 P.2d 1259 (1978); *State v. Edwards,* 224 Kan. 266, 579 P.2d 1209 (1978); *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978); *State v. Purdy,* 228 Kan. 264, 615 P.2d 131 (1980); and *State v. Hutchison,* 228 Kan. 279, 615 P.2d 138 (1980).

Prior to the admission of the oral statement of Green, the trial court held an in camera hearing to determine its admissibility. The trial judge found that the statement could be introduced into evidence as long as all references to Porter and Smith were omitted. This process is known as redaction, which was defined by this court in *Purdy* as the "process of editing a defendant's statement or confession to excise or delete incriminating references to a codefendant . . . ." Syl. ¶ 1. The case at bar, along with *Purdy* and *Hutchison,* is the first to come before this court dealing with redaction. *Purdy* and *Hutchison* involve written, interlocking statements, while the statement in the present case was an oral one which was not reduced to written form. In *Bruton,* the United States Supreme Court recognized the use of redaction in various jurisdictions without specific approval or disapproval. *Bruton v. United States,* 391 U.S. at 134, n. 10. There are, however, numerous federal and state cases dealing with the use of edited statements in trials of joint codefendants. For a summary of the rationale of many of these cases see *State v. Purdy,* and also Annot., Confrontation Clause - Bruton Rule, 29 L.Ed.2d 931, 991.

As we noted in *Purdy,* there are two somewhat conflicting

rationales being employed by various courts for determining the adequacy of the redaction. In *United States v. Wingate,* 520 F.2d 309 (2d Cir. 1975), *cert. denied* 423 U.S. 1074 (1976), the defendant and codefendant were convicted of conspiracy to distribute heroin. Wingate's codefendant, Smith, had made oral and written statements to the police inculpating both Wingate and himself. These statements were admitted into evidence after all references to Wingate had been deleted and the jury was instructed to consider the statements only against Smith and not against Wingate. In both of the redacted statements there was reference to an unidentified individual who participated in the venture. Wingate argued that his conviction should be reversed because Smith's statements appear to incriminate him when they are read in light of other evidence presented at the trial. The United States Court of Appeals rejected this argument and held that "a defendant's statement is admissible at a joint trial, with cautionary instructions, even though the other evidence in the case indicates that an unmentioned codefendant was also involved in the activities described in the statement." *United States v. Wingate,* 520 F.2d at 314 (citations omitted). See also *United States, ex rel., Nelson v. Follette,* 430 F.2d 1055 (2d Cir. 1970), *cert. denied* 401 U.S. 917 (1971), and *United States v. Blassick,* 422 F.2d 652 (7th Cir. 1970). In *Wingate* the Court was of the opinion that cautionary instructions were ineffective under *Bruton* "only where the extrajudicial statement admitted into evidence is 'clearly inculpatory' as to the complaining codefendant and is 'vitally important to the government's case.' " 520 F.2d at 313 (citations omitted).

As a result of the Wingate decision a number of courts have held that before a statement is "clearly inculpatory" the complaining defendant must be mentioned by name. Thus the mere omission of a codefendant's name and the substitution of words such as we, him, her, them, the others, etc., in the statement has been held adequate to allow such statements to be admitted into evidence. We do not agree that such limited redaction is adequate in all cases to protect a codefendant's right to confrontation under the Sixth Amendment to the Constitution of the United States.

The better reasoned approach to redaction is that enunciated in *State v. Williams,* 27 Ariz. App. 279, 554 P.2d 646 (1976). In *Williams* two codefendants were convicted of first degree rape. One of the codefendants had made a statement to the police. This

statement in redacted form was allowed into evidence. On appeal the Arizona Court of Appeals held that in the context of Williams' own statements and other evidence at the trial, the inevitable effect of the codefendant's statement, which described repeated forcible rapes by unnamed individuals, was to inculpate Williams. It was therefore held that "[s]o long as the jury is highly likely to infer that the defendant is a nameless individual incriminated by the statement, the defendant's rights are nevertheless violated." *State v. Williams,* 27 Ariz. App. at 287.

It is unreasonable to assume that in all cases the mere deletion of a defendant's name from a codefendant's incriminating statement is going to protect the complaining defendant from being implicated in the minds of the jury, when the statement refers to other participants in the crime and the other defendants are sitting at the same counsel table charged with the same crimes. The United States Supreme Court recognized this problem in *Harrington v. California,* 395 U.S. 250, 23 L.Ed.2d 284, 89 S.Ct. 1726 (1969), where Harrington, a white man, was on trial with three black codefendants. Incriminating statements made by the black defendants did not use Harrington's name but there were references to "the white guy." The U.S. Supreme Court agreed with Harrington that "it is irrelevant that he [Harrington] was not named in Cooper's and Bosby's [codefendants] confessions, that reference to 'the white guy' made it clear as pointing and shouting that the person referred to was the white man in the dock with the three Negroes." *Harrington v. California,* 395 U.S. at 253. The Court went on to say that although the trial court erred in admitting the codefendants' statements, the error was harmless because the confessions were merely cumulative in light of other overwhelming evidence against the defendant. See also *Brown v. United States,* 411 U.S. 223, 36 L.Ed.2d 208, 93 S.Ct. 1565 (1973).

In the case at bar, the implication may not be as blatant as it was in *Harrington,* but it is nevertheless clear that the reference made by Green to "they," "two parties," "three other parties," etc., who met with him at the Kentucky Fried Chicken store and planned the robbery referred to and implicated Porter and Smith. Green's statement was therefore improperly admitted into evidence.

Part and parcel of this same point is the failure of the trial court to give a limiting or cautionary instruction to the jury to the effect

that Green's statement could only be considered in determining the guilt or innocence of Green and was not to be considered in determining the guilt or innocence of Smith or Porter. Defendants rely upon our decisions in *State v. Sullivan & Sullivan,* 224 Kan. 110, and *State v. Edwards,* 224 Kan. 266, for the argument that the giving of a limiting instruction is a threshold requirement and the failure to give such an instruction is error per se requiring a reversal. We do not agree. In *Sullivan & Sullivan,* we adopted the rule that:

> "A confession by an accused relative to the offense charged is admissible only against the confessor and in a joint trial of codefendants it is necessary that an instruction be given to the jury limiting the use and purpose of the confession to a determination of the guilt of the confessor. *In the absence of such a limiting instruction this court under the facts of this case cannot say it was harmless error beyond a reasonable doubt."* Syl. ¶ 4. (Emphasis added.)

The holding in *Sullivan & Sullivan* was followed in the case of *State v. Edwards,* 224 Kan. 266. In both of these cases limiting instructions were not given and we held that based upon the evidence in those cases the failure to give the instruction was reversible error. In those cases the other evidence was not so strong that it could be said that the giving of the instruction might not have affected the verdicts. It is, of course, always error to fail to give such an instruction, but if the other, independent evidence is so strong that it may be said the failure to give the instruction could not have affected the verdict of the jury, then the error may be harmless beyond a reasonable doubt.

The evidence introduced at trial shows that Porter was a passenger in the car which Kilian saw parked in the Sears parking lot. It was this car police chased through the city at high speed and Porter was one of the two men who ran from the car after it hit the telephone pole. Police found Porter in the immediate vicinity hiding under a parked car after they chased him from the scene of the car wreck. In his possession, police found a billfold containing identification papers belonging to Alfred Eugene Antonette, one of the APCO attendants who had been robbed. Antonette later identified the billfold as being his and also picked Porter out of a lineup as being one of the two men who robbed him. The other attendant who was robbed, Raymond Anderson, also positively identified Porter at the lineup as one of the men who robbed him. In light of this overwhelming evidence, Green's statement was merely cumulative and the error was harmless beyond a reasonable doubt as to Porter.

The same holds true for defendant Smith. The record shows that a car belonging to Smith's sister was observed parked in the Sears parking lot with its motor running while the robbery was taking place. The two occupants of the car were continuously looking over their shoulders in the direction of the APCO station. Defendants Porter and Green were seen running to the car from the direction of the APCO station and after entering the car the driver drove away from the Sears parking lot at a higher than normal rate of speed. A few minutes later when police observed the same car run a stop sign and signaled for the driver (Smith) to pull over, a high speed chase through the city ensued. The arresting officer testified that after Smith's car hit a telephone pole Smith and the other occupants attempted to flee the scene on foot. Smith and Green, however, were dissuaded from running when the officer drew his revolver and pointed it at them.

In light of this evidence and defendant Smith's own testimony, we hold that the admission of Green's statement into evidence constituted harmless error beyond a reasonable doubt as to Smith.

At this point we deem it advisable to pause and comment upon the practice of attempting to use a redacted or edited oral statement that has not been reduced to writing. In *Hutchison* Justice Fromme commented upon the dangers inherent in joint trials where the statement or confession of one defendant, which inculpates a codefendant, is to be introduced in evidence. The practice of attempting to use an edited oral statement based upon the memory of the witness is fraught with danger and invites a mistrial or reversal.

> "Where the confession is offered in evidence by means of oral testimony, redaction is patently impractical. To expect a witness to relate X's confession without including any of its references to Y is to ignore human frailty. Again, it is unlikely that an intentional or accidental slip by the witness could be remedied by instructions to disregard." Note, *Codefendants' Confessions,* 3 Colum. J. of Law & Soc. Prob. 80, 88 (1967).

Recognizing the desirability of joint trials as well as the problems that arise in joint trials, the American Bar Association Project on Standards for Criminal Justice, Joinder and Severance (1974), recommends the following:

"**2.3 Severance of defendants.**

(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the

court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:

(i)   a joint trial at which the statement is not admitted into evidence;

(ii)   a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the confession will not prejudice the moving defendant; or

(iii) severance of the moving defendant."

Smith's second point on appeal is that there was juror misconduct sufficient to entitle him to a new trial. It is contended that an elderly woman juror fell asleep during the trial and that the appellant was thereby prejudiced. No objection was made during the trial and the record does not contain any indication that a juror was in fact sleeping during the presentation of the case.

"Where alleged juror misconduct claimed as prejudicial is known by the party or his counsel prior to rendition of a verdict, and no objection is made, nor the matter brought to the court's attention, the party cannot later assert the misconduct as grounds for a new trial." *State v. Buggs,* 219 Kan. 203, Syl. ¶ 4, 547 P.2d 720 (1976).

Smith's second point is without merit.

Defendant Green's first point on appeal is that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the Constitution of the United States and K.S.A. 1979 Supp. 22-3204. Green did not make bond and from the date of arraignment to the day of the trial, 94 days elapsed. The only continuance in this case was  obtained by Green's attorney, Richard Keithley. A pretrial conference had been scheduled for June 20, 1979, but on that date the conference was continued for 21 days by the defense due to the fact that Keithley was unable to be present. Green argues that he was present at the original pretrial hearing and did not participate in or agree to the request for a continuance; however, he made no objection to the continuance and the matter was not raised during trial or in the motion for new trial.

It is well settled in this state that any period of delay resulting from a continuance granted at the request of the defendant is to be excluded in computing the time for trial required by K.S.A. 1979 Supp. 22-3402. *State v. McCambry,* 225 Kan. 803, 594 P.2d 222 (1979). Green's first point is without merit.

Finally Green and Porter contend they received ineffective assistance of counsel from their court-appointed attorney, Richard Keithley. This issue was never raised at any time during the trial nor on the defendants' motion for a new trial. The trial court was therefore not given an opportunity to consider this issue. Since the point was not presented to or determined by the district court, it is not properly before this court and will not be considered for the first time on appeal. *State v. Roberts,* 226 Kan. 740, 602 P.2d 1355 (1979).

The judgment of the trial court is affirmed.

FROMME, J., concurring. The complaining defendants, who contend it was reversible error not to give a limiting instruction as to Green's oral confession, failed to request the instruction in the trial court. K.S.A. 60-251(*b*) provides, "[n]o party may assign as error the . . . failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects . . . ."

I do not believe the harmless beyond a reasonable doubt rule, expressed in Syllabus ¶ 4 and in the corresponding portion of the opinion, will cure both the erroneous introduction of the Green oral confession and the error in failing to give the required limiting instruction.

I have been unable to find any case in which the harmless error rule has been used to cure both the error in admitting the evidence in violation of the *Bruton* rule and the additional error in failing to limit the impact of that evidence to the confessor. In the present case, however, the complaining parties waived any error as to the failure to instruct by failing to make an objection in the trial court. I concur in the affirmance.