No. 52,363

STATE OF KANSAS, *Appellant,* v. JOE BUDDY MYERS, *Appellee.*

(625 P.2d 1111)

Opinion filed January 17, 1981.

*Dennis C. Sauter,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for the appellant.

*Charles S. Arthur, III,* of Arthur, Green, Arthur & Conderman, of Manhattan, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an interlocutory appeal brought by the State, pursuant to K.S.A. 1979 Supp. 22-3603, from an order of the district court suppressing certain evidence proffered by the State. The defendant was charged, along with Lorin Axvig, with felony murder (K.S.A. 21-3401), aggravated kidnapping (K.S.A. 21-3421), and aggravated burglary (K.S.A. 21-3716).

This case has not, as yet, gone to trial and, thus, the facts have not been fully developed. The evidence presented at the preliminary hearing showed, in substance, that in the early morning hours of September 11, 1979, Kevin Kitchens, a guest of Christel Watson, was fatally shot at her apartment in Manhattan. Kitchens was last seen alive some time around 2:00 a.m. He was found dead in the apartment at approximately 3:30 a.m. At 11:00 p.m. on the evening of September 10, defendant, Joe Buddy Myers, appeared at Watson's apartment and picked up fifteen pounds of marijuana which he was to distribute. He was to return to the

apartment and make payment to Christel Watson for the marijuana later that evening. The defendant returned to the apartment at approximately 2:00 a.m. with Lorin Axvig. At this time, Watson's sister, Elke McGuyton, was in the adjoining bedroom with the deceased, Kevin Kitchens. Apparently a dispute arose over payment for the drugs. Defendant Myers forced the two women to leave the apartment at gunpoint. Both of the women testified that they last saw the deceased, Kitchens, alive lying on his stomach with Axvig pointing a gun at him, at approximately 2:05 a.m. Myers was escorting the two women to the car, when Christel Watson suddenly broke away and ran. Lorin Axvig came out of the apartment building a short time later and got into the car along with the defendant and Elke McGuyton. Christel Watson went to a friend's house seeking help. They returned to Watson's apartment at approximately 3:30 a.m., where the body of Kevin Kitchens was found in the bedroom area, precisely where both of the women had seen Kitchens held at gunpoint by Lorin Axvig.

Investigation by the police resulted in the issuance of a warrant for the arrest of Joe Buddy Myers and Lorin Axvig on the charges mentioned above. Defendant Myers was arrested on September 12, 1979. The warrant for Axvig remained outstanding until January 30, 1980, when the charges were dismissed following verification of Lorin Axvig's death in Texas.

During the course of the initial investigation, Linda Axvig, wife of Lorin Axvig, was interviewed by the police about her knowledge of the events of September 10 and 11, but she provided the police with no information. The preliminary hearing for defendant Myers was held in the district court of Riley County on October 22, 1979, and Myers was bound over for trial on the three charges. On January 30, 1980, Linda Axvig was again interviewed by the police authorities. At that time she was advised that Lorin Axvig had been murdered in Texas and his body taken to Oklahoma. She was further advised that two individuals had been charged with his murder in Texas. The following day, January 31, 1980, Linda Axvig was again interviewed by police officials in Junction City at which time her statement was taken under oath before a court reporter.

The evidence suppressed by the district court was the proffered testimony of Linda Axvig as contained in the transcribed state-

ment which she gave to the police on January 31, 1980. In her statement, Linda Axvig related that at about 5:30 a.m. on September 11, 1979, approximately three and one-half hours after the homicide, her husband, Lorin Axvig, arrived at the Axvig trailer in Junction City with Myers in Myers's automobile. Lorin Axvig told her, in substance, that he had "just killed someone" and that Joe Buddy Myers had asked him to commit the killing. It is undisputed that the statements allegedly made to Linda Axvig by Lorin Axvig were made outside of the presence of Joe Myers and would constitute hearsay evidence at Myers's trial. The dispute between the parties is not over Linda Axvig's personal observations made at the time. The sole dispute pertains to the admissibility of the statements made by Lorin Axvig who was an alleged coparticipant in the homicide.

Upon receipt of the transcript of Linda Axvig's statement by the prosecutor, a copy was provided to defense counsel who in turn filed a motion in limine requesting suppression of all the oral statements made by Lorin Axvig to his wife in the absence of defendant Myers. The basis of the defendant's objection to the introduction of the oral statements of Lorin Axvig to his wife, Linda, was that their admission into evidence at Myers's trial would constitute a violation of defendant's right to confrontation of witnesses as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. After providing a hearing on the motion to suppress, the district court sustained the motion, holding that the evidence was barred by the confrontation clause of the Sixth Amendment, applicable to the states through the Fourteenth Amendment. The State then filed this interlocutory appeal.

The sole point raised by the State on the appeal is that the trial court erred in sustaining the defendant's motion to suppress the oral statements made by Lorin Axvig to his wife, which implicated himself and defendant Myers in the killing of Kevin Kitchens. In support of its position, the State maintains that the oral statements made by the deceased declarant, Lorin Axvig, are admissible into evidence as exceptions to the hearsay rule and, therefore, they should not be suppressed as a violation of the confrontation clause.

The Kansas statute governing the admissibility of hearsay evidence is K.S.A. 60-460. The sections of K.S.A. 60-460 which we must consider on this appeal are as follows:

"60-460. **Hearsay evidence excluded, exceptions.** Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . .

"(*d*) *Contemporaneous statements and statements admissible on ground of necessity generally.* . . . (3) if the declarant is unavailable as a witness, a statement narrating, describing or explaining an event or condition which the judge finds was made by the declarant at a time when the matter had been recently perceived by the declarant and while his or her recollection was clear, and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort;

. . . .

"(*f*) *Confessions.* In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged if, and only if, the judge finds that the accused when making the statement was conscious and was capable of understanding what he or she said and did, and that the accused was not induced to make the statement (1) under compulsion or by infliction or threats of infliction of suffering upon him, her or another, or by prolonged interrogation under such circumstances as to render the statement involuntary, or (2) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same;

. . . .

"(*i*) *Vicarious admissions.* As against a party, a statement which would be admissible if made by the declarant at the hearing if . . . (2) the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination, . . .

"(*j*) *Declarations against interest.* Subject to the limitations of exception (*f*), a statement which the judge finds was at the time of the assertion so far contrary to the declarant's pecuniary or proprietary interest or so far subjected the declarant to civil or criminal liability or so far rendered invalid a claim by him or her against another or created such risk of making him or her an object of hatred, ridicule or social disapproval in the community that a reasonable man in the declarant's position would not have made the statement unless he or she believed it to be true;"

In determining the admissibility of hearsay evidence under one of the exceptions to the hearsay rule, a trial court must also consider the application of the confrontation clauses as contained in the Sixth Amendment and also in Section 10 of the Bill of Rights of the Kansas Constitution. Both constitutions guarantee to a defendant in a criminal case the right to be confronted with the witness against him. In the recent case of *Ohio v. Roberts,*

448 U.S. 56, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980), the United States Supreme Court considered the relationship between the confrontation clause and the hearsay rule with its many exceptions. The court recognized that hearsay evidence may be admissible in a criminal trial, under certain exceptions to the hearsay rule, without violating the right of confrontation. The court emphasized that the confrontation clause reflects a preference for face-to-face confrontation at trial, and that "a primary interest secured by the provision is the right of cross-examination." Simply stated, the court recognized that the impact of the right of confrontation is to place limitations on the admissibility of hearsay evidence in criminal cases which are not applicable in civil cases.

In *Ohio v. Roberts,* the court stated that the confrontation clause operates in two separate ways to restrict the range of admissible hearsay. The first is a rule of necessity; that is, the prosecution must either produce or demonstrate the unavailability of declarant whose statement it wishes to use against the defendant. The second aspect operates once a witness is shown to be unavailable; then the clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule," which is to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence. Thus, said the court, for hearsay testimony to be admissible, there must be a showing of "indicia of reliability" so as to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement." In the opinion, Justice Blackmun summarized the requirements of the confrontation clause in the following language:

> "In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." p. 608.

In considering the admissibility of the oral statements made by Lorin Axvig to his wife, it is important that we keep in mind that the declarant was an alleged coparticipant in the crimes charged against the defendant Myers. The statements claimed to have been made by Lorin Axvig fall within two basic categories: (1)

Statements which constitute a confession of the commission of the homicide by Lorin Axvig, and (2) statements which incriminate defendant Myers in the homicide. K.S.A. 60-460(*f*) covers the admissibility of confessions in criminal proceedings. That section, which is set forth in full above, essentially provides that, in a criminal proceeding, a confession of the accused is admissible *as against the accused,* if voluntarily and understandably made. Under 60-460(*f*), a hearsay confession of one coparticipant in a crime is not admissible against *another coparticipant.* For almost one hundred years, this court has consistently held that a hearsay confession is admissible in a criminal case only against the person making the statement or confession. *State v. Johnson,* 40 Kan. 266, 19 Pac. 749 (1888); *State v. Bogue,* 52 Kan. 79, 34 Pac. 410 (1893); *State v. Rogers,* 54 Kan. 683, 39 Pac. 219 (1895); *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978) (Fromme, J.); *State v. Edwards,* 224 Kan. 266, 579 P.2d 1209 (1978) (McFarland, J.); *State v. White & Stewart,* 225 Kan. 87, 587 P.2d 1259 (1978) (Miller, J.); *State v. Rodriquez,* 226 Kan. 558, 601 P.2d 686 (1979) (Herd, J.); *State v. Hutchison,* 228 Kan. 279, 615 P.2d 138 (1980) (Fromme, J.); *State v. Porter, Green & Smith,* 228 Kan. 345, 615 P.2d 146 (1980) (Holmes, J.).

Under K.S.A. 60-460(*i*)(2), hearsay statements made by a coparticipant which implicate the accused in a crime are admissible against the accused only while the plan to commit the crime is in existence and "before its complete execution or other termination." Under this exception, this court has consistently held that hearsay statements of a coconspirator or coparticipant which implicate the accused and are made *after the crime has been consummated* are not admissible against the accused. *State v. Porter, Green & Smith,* 228 Kan. 345; *State v. Hutchison,* 228 Kan. 279; *State v. Rodriquez,* 226 Kan. 558; *State v. Goyens,* 110 Kan. 421, 204 Pac. 704 (1922); *State v. Young,* 55 Kan. 349, 40 Pac. 659 (1895); *State v. Johnson,* 40 Kan. 266.

The State in its brief, however, argues that the oral statements of Lorin Axvig are admissible under other exceptions as contained in K.S.A. 60-460. The State directs our attention to 60-460(*d*)(3) which provides an exception to the hearsay rule where a declarant is unavailable as a witness and the statement offered is one narrating, describing, or explaining an event which the judge finds was made by the declarant when the matter had been

recently perceived by the declarant and while his or her recollection was clear, and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort. The State also argues that the oral statements of Lorin Axvig were admissible under the hearsay exception contained in K.S.A. 60-460(*j*) as a declaration against penal interest. If the State is correct in its position then the specific statutory limitations on the admissibility of confessions (60-460[*f*]) and incriminating statements of coparticipants (60-460[*i*]) would, in effect, be totally nullified. We cannot believe that it was the intent of the legislature to permit hearsay confessions and extrajudicial statements of coparticipants in crime to be admitted against the accused in a criminal case without satisfying the requirements set forth in those sections of K.S.A. 60-460. Sections 60-460(*f*) and 60-460(*i*) should be considered as controlling where the issue before the court at a criminal trial is the admissibility of the confession or hearsay statement of a coparticipant.

We believe that this must be the law in light of the purpose of the confrontation clauses of the Sixth Amendment and Section 10 of the Kansas Bill of Rights. As noted above, the decision in *Ohio v. Roberts* declares that the confrontation clause requires a showing (1) that a witness not present for cross-examination is unavailable and (2) that the statement bears adequate indicia of reliability or guarantees of trustworthiness. Under the factual circumstances presented in this case, the element of necessity, arising from the unavailability of the declarant for cross-examination in court, is satisfied because, admittedly, Lorin Axvig is deceased. The question then arises whether the oral statements of Lorin Axvig to his wife bear adequate indicia of reliability or guarantees of trustworthiness. We do not consider the statements of Lorin Axvig to satisfy the requirement of reliability or trustworthiness. In reaching that conclusion we have considered the following factors:

(1) Out-of-court hearsay statements of coparticipants in crime have traditionally been considered as unreliable and not trustworthy. In addition to the many Kansas cases cited above we note *Bruton v. United States*, 391 U.S. 123, 136, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968); *Dutton v. Evans*, 400 U.S. 74, 27 L.Ed.2d 213, 91 S.Ct. 210 (1970); *Douglas v. Alabama*, 380 U.S. 415, 13 L.Ed.2d 934, 85 S.Ct. 1074 (1965); and *Chambers v. Mississippi*,

410 U.S. 284, 35 L.Ed.2d 297, 93 S.Ct. 1038 (1973). In fact, the testimony of an accomplice against an accused is considered so unreliable as to require a precautionary instruction where there is a lack of evidence which corroborates the testimony of the accomplice. See *State v. Moody,* 223 Kan. 699, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978).

(2) In Kansas, as noted above, we have traditionally excluded hearsay statements of coparticipants in a crime as a violation of an accused's right of confrontation;

(3) The factual circumstances presented in this case do not furnish the necessary trustworthiness or indicia of reliability;

(a) The declarant, Lorin Axvig, was admittedly a coparticipant in the crime. The statements were made by the declarant approximately three and one-half hours after the commission of the homicide. Hence, the statements were not a part of the res gestae and were merely a recitation of a past event.

(b) The statement of the *declarant* to his wife was not under oath or made in open court.

(c) The declarant, in making the statement to his wife incriminating the defendant Myers, had a reason to lie to his wife—to shift responsibility for the homicide, at least in part, to another person to lessen his own responsibility.

(d) The statement was made by Lorin Axvig to his wife with a reasonable expectation that it would not be repeated to the police authorities in view of the confidential relationship between husband and wife and in view of the marital privilege.

(e) The wife, Linda Axvig, did not report the conversation to the police promptly after it occurred. The conversation allegedly took place on September 11, 1979, and was not revealed to the police authorities until January 31, 1980, four and one-half months later. The statement of Linda Axvig thus lacked the element of spontaneity.

(f) Linda Axvig had previously been interrogated by the police in September, 1979, and denied that she had any knowledge about her husband's participation in the homicide.

(g) If the statements were admitted into evidence, defendant Myers would be denied any right of cross-examination or

effective tool to test the truth of the oral statements of Lorin Axvig.

In sum, we fail to find any circumstances in the case which would satisfy the special requirements of *Ohio v. Roberts* that there be a showing of "particularized guarantees of trustworthiness."

The trial judge, in suppressing the oral statements of Lorin Axvig as a violation of the confrontation clause, noted in the record several factors he considered. He considered the hearsay statements to be of great and controlling significance and of such a nature as to command a significant and compelling portion of the jury's attention and deliberation. He concluded that the prospect of harmless error in the admission of the statements would be unlikely and clearly impossible. He noted that the statements in question contained express assertions of *past* facts. He concluded that upon a cross-examination of the declarant, Lorin Axvig, there would be a distinct possibility that the statements could be shown to be unreliable and not accurate. Simply stated the trial court concluded that, if the statements were admitted at the trial, the defendant Myers would be denied his right of cross-examination with no effective way of affording the trier of fact a satisfactory method of evaluating the truth of the oral hearsay statements of the declarant, Lorin Axvig.

Under all the circumstances, we cannot say that the trial court committed error in suppressing the proffered testimony of Linda Axvig on the ground that admission of her testimony would violate the defendant's constitutional right of confrontation.

The judgment of the district court is affirmed.

HERD, J., dissenting: I recognize the hearsay rules and the Sixth Amendment right to confrontation are important guarantees to insure a fair trial. There are, however, recognized exceptions to the introduction of hearsay evidence (K.S.A. 60-460), and *Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed.2d 597, 605-608, 100 S.Ct. 2531 (1980) reconciles hearsay exceptions with that Sixth Amendment right.

I believe the statement of Linda Axvig should be admitted into evidence pursuant to K.S.A. 60-460(*d*)(3). Lorin Axvig is deceased and is, therefore, unavailable. The circumstances surrounding Lorin's statement to Linda concerning his involvement and that

of the defendant Myers in the murder of Kevin Kitchens show it meets the test of reliability.

The statement was made in confidence with a reasonable expectation Linda would never repeat it due to the marital privilege. That expectation of privacy adds credence and reliability to the statement. Lorin's statement was spontaneous and was against his penal interest, "indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Dutton v. Evans,* 400 U.S. 74, 89, 27 L.Ed.2d 213, 91 S.Ct. 210 (1970). I would admit the statement into evidence.

SCHROEDER, C.J. and MCFARLAND, J., join the foregoing dissenting opinion.