NOT DESIGNATED FOR PUBLICATION

No. 115,125

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARRELL L. FARMER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; ROGER L. GOSSARD, judge. Opinion filed August 4, 2017. Affirmed.

*Michael P. Whalen* and *Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*: Darrell L. Farmer appeals the Montgomery County District Court's denial of habeas corpus relief on his convictions for first-degree felony murder and other crimes. The district court rejected Farmer's claim that he was ineffectively represented during the jury trial because his lawyers pursued a defense based on voluntary intoxication rather than involuntary intoxication. The evidence adduced at the hearing on Farmer's habeas corpus motion, under K.S.A. 60-1507, indicates the lawyers made a strategic decision in opting for voluntary intoxication. Moreover, as we explain, given

1

how the jury was instructed and the nature of the defenses, Farmer cannot show a reasonable probability that an involuntary intoxication defense would have yielded a better outcome for him at trial. We, therefore, affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

We recount briefly the underlying criminal episode that took place on July 13, 2002, in Coffeyville, Kansas. While walking in the apartment complex where he lived, Farmer approached DeAundrey Neal, who was sitting in a car. According to a witness, Farmer spoke to Neal through the front passenger window and then walked around to the front driver window, pulled out a handgun, and fired multiple shots at Neal. Neal was struck with six bullets, including three to the head. He died in the car. Farmer returned briefly to his apartment.

Farmer then walked to the home of Levi and Betty Hayes, ostensibly to collect a debt Levi owed him. Farmer kicked in the front door and confronted Levi, beating him with the handgun. Farmer then grabbed Betty, put the gun to her head, and threatened to kill her. He again confronted Levi, and the two wrestled over the gun. Levi eventually got the gun away from Farmer, who then left the house. Meanwhile, Betty was able to run to a neighbor's home to call the police.

Police officers quickly located Farmer. When confronted, Farmer began to take off his clothes. The police arrested Farmer, secured a waiver from him of his *Miranda* rights, and began to question him. Initially, Farmer denied being under the influence of drugs or alcohol and disclaimed any knowledge about the shooting of Neal. When Farmer was booked into the Montgomery County jail, officers found a bullet of the type used to shoot Neal and a vial of phencyclidine (PCP) in his pocket.

2

The next morning two detectives questioned Farmer after securing another *Miranda* waiver from him. Pertinent to the issue here, Farmer admitted that shortly before his confrontation with Neal, he smoked a marijuana cigarette provided to him by another person without realizing it had been dipped in PCP. Farmer repeated that he didn't know about the shooting but later during the questioning acknowledged he had shot Neal because he was angered by Neal's offer to buy crack cocaine from him.

The State charged Farmer with: (1) first-degree felony murder of Neal based on the predicate offense of criminal discharge of a firearm at an occupied vehicle; (2) felony criminal discharge of a firearm at an occupied vehicle; (3) aggravated burglary for forcibly entering the Hayes' home; (4) aggravated battery of Levi Hayes; and (5) aggravated assault of Betty Hayes. In a 4-day trial in fall 2003, a jury convicted Farmer of all of the charged crimes. Farmer did not testify. But his lawyers presented testimony from a psychiatrist about the effects PCP can have on a person's physiological and psychological functioning. As we discuss in more detail, the district court instructed the jury on voluntary intoxication as a partial defense.

The district court later sentenced Farmer to life in prison for the felony-murder conviction and consecutive terms of imprisonment on the remaining convictions totaling 288 months. Farmer pursued a direct appeal, and the Kansas Supreme Court affirmed the convictions and sentences. *State v. Farmer*, 285 Kan. 541, 175 P.3d 221 (2008) (*Farmer I*).

Farmer timely filed a motion for habeas corpus relief under K.S.A. 60-1507. The district court then appointed a lawyer to represent him and held a preliminary hearing in July 2010 at which Farmer was the only witness. Two years later, after awaiting proposed findings of fact and conclusions of law from Farmer and the State, the district court denied the motion. Farmer appealed that ruling. This court affirmed in part and reversed in part. *Farmer v. State*, No. 108,911, 2014 WL 2871314 (Kan. App. 2014) (unpublished

3

opinion) (*Farmer II*). In *Farmer II*, this court upheld the denial of Farmer's 60-1507 motion in all respects except his claim that he was inadequately represented at trial as a result of his lawyers' decision to advance voluntary intoxication rather than involuntary intoxication as a defense. Because Farmer's lawyers had not testified at the preliminary hearing, this court could not assess whether that choice reflected a reasoned strategic decision. The court pointed out that some of Farmer's statements to the investigating detectives supported an involuntary intoxication defense, insofar as he claimed he was unaware that the marijuana he smoked just before shooting Neal had been laced with PCP. The opinion reversed the district court's denial of relief on that point and remanded for further proceedings. 2014 WL 2871314, at *5-6.

In December 2014, the district court heard testimony from the four lawyers who represented Farmer leading up to and during the trial more than 11 years earlier. William Fitzpatrick initially represented Farmer and withdrew as his lawyer after about 8 months. Fitzpatrick testified that he explored involuntary intoxication and other defenses based on Farmer's account of unwittingly ingesting PCP shortly before the shooting and break-in. He said he did legal research and contacted toxicologists and other potential witnesses regarding the effects of PCP. Fitzpatrick testified that he documented that work in his file. But he said he had come to no definitive conclusion on what defense or defenses to pursue at trial. Philip Bernhart briefly represented Farmer and continued Fitzpatrick's investigation of potential intoxication and impairment defenses. He, too, never got to the stage of making a firm decision on trial strategy.

John Kerns and Charles Osburn then took over Farmer's defense and represented him at trial. Kerns testified that he had little detailed recollection of the case because it had been so long ago and he had been given the file to review just before testifying. Kerns testified that he did not think the file he looked at was complete. Kerns agreed that he relied on a voluntary intoxication defense at trial but could not specifically recall whether he also considered involuntary intoxication. Osburn testified that Kerns served as

4

the lead trial lawyer, while he acted in a backup capacity. Given that division of authority, Osburn indicated Kerns made the principal strategic decisions. Osburn testified that he recalled considering intoxication defenses but could not remember precisely why they opted for voluntary intoxication.

About a year after the hearing, the district court filed a short journal entry finding that all of the lawyers representing Farmer had reasonably investigated the case and Kerns and Osburn concluded voluntary intoxication to be "the most appropriate defense to pursue." Based on those findings, the district court determined Farmer had been adequately represented and again denied him relief on the issue of the defenses presented at trial. Farmer has timely appealed the district court's denial, and that ruling is what we have before us now.

LEGAL ANALYSIS

*Governing Legal Principles*

When reviewing the denial of a 60-1507 motion after a full evidentiary hearing, an appellate court accepts the district court's findings of fact to the extent they are supported with substantial competent evidence. The appellate court exercises unlimited review of the determinative legal issues in light of those factual findings. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

A criminal defendant has a right to competent legal representation as guaranteed in the Sixth Amendment to the United States Constitution. To demonstrate constitutionally ineffective assistance of the lawyers handling his criminal case in the district court, Farmer must show the representation fell below an objective standard of reasonableness resulting in legal prejudice, meaning there probably would have been a different outcome had the representation been adequate. *Strickland v. Washington*, 466 U.S. 668, 687-88,

694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance); see also *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 (2006) (stating *Strickland* test and *Chamberlain* standard of review). In short, Farmer must identify both substandard lawyering and resulting legal prejudice. As the United States Supreme Court and the Kansas Supreme Court have emphasized, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90 (noting potential distorting effects of hindsight review, so courts generally should presume lawyer's representation falls within "wide range of reasonable professional assistance"); *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should counsel's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among multiple options. *Strickland*, 466 U.S. at 689-90.

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has been satisfied, meaning that a minor mistake or even a number of minor mistakes do not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 110-11, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice. See *Miller v. State*, 298 Kan. 921, 938-39, 318 P.3d 155 (2014) (applying *Strickland* test to error by lawyer handling direct criminal appeal).

Reviewing courts commonly first assess the quality of the representation, and if it satisfies the Sixth Amendment standard of adequacy, they dispense with any consideration of prejudice as unnecessary. But that is not an implacable approach. A reviewing court may deny relief based on the absence of prejudice to the defendant without deciding the constitutional sufficiency of the legal representation. See *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *Sola-Morales v. State*, 300 Kan. 875, 886, 335 P.3d 1162 (2014).

In this case, we address the law as it was before the recodification of the Kansas Criminal Code in 2010. Although voluntary and involuntary intoxication remain statutorily recognized limitations on criminal liability, see K.S.A. 2016 Supp. 21-5205, we have no need to (and do not) consider how they may apply under the current code, especially in light of the definitions of mental culpability in the code, see K.S.A. 2016 Supp. 21-5202.

In 2002, the defenses of involuntary intoxication and voluntary intoxication were codified in K.S.A. 21-3208. Involuntary intoxication provided a complete defense to a crime only if the defendant were, as a result, "substantially incapable of knowing or understanding the wrongfulness of his [or her] conduct and of conforming his [or her] conduct to the requirements of the law." K.S.A. 21-3208(a). Essentially, the defense required a person to be so impaired that he or she lacked the capacity to appreciate what he or she was doing and, in turn, to recognize that conduct to be unlawful. The impairment had to approach a nearly complete loss of rationality. Voluntary intoxication provided a limited defense to specific intent crimes when the defendant's degree of impairment precluded the formation of the requisite specific intent. K.S.A. 21-3208(b). But voluntary intoxication afforded no shield to general intent crimes. See *State v. Farris*, 218 Kan. 136, 143, 542 P.2d 725 (1975), *disapproved of on other grounds State v. Lee*, 266 Kan. 804, 815-16, 977 P.2d 263 (1999). In short, voluntary intoxication didn't

7

provide as broad a defense as involuntary intoxication, but neither did it require as debilitating a degree of cognitive impairment.

At trial, the district court used the following instruction to guide the jurors in their consideration of voluntary intoxication as a defense:

> "Voluntary intoxication may be a defense to the charge of criminal discharge of a firearm at an occupied vehicle and aggravated burglary, where the evidence indicates that such intoxication impaired the defendant's mental faculties to the extent that he was incapable of forming the necessary intent of maliciousness, committing an aggravated battery, for criminal discharge of a firearm at an occupied vehicle and aggravated burglary, respectively."

The instruction tracked the language of PIK Crim. 3d 54.12-A.

*Legal Principles Applied*

Farmer contends the evidence produced on his 60-1507 motion, including the hearing testimony, failed to establish that Kerns and Osburn made a strategic decision to rely on voluntary intoxication rather than involuntary intoxication as a defense, and their representation of him, therefore, must have been constitutionally inadequate. The issue isn't nearly as stark as Farmer casts it. The lawyers obviously looked at the factual circumstances and considered what potential benefit could be gained at trial from Farmer's ingestion of PCP. They sought out a well-qualified expert witness to testify at trial and secured a jury instruction on voluntary intoxication.

That's circumstantial evidence indicating a calculated consideration of the nature of the defense, and those circumstances also inferentially suggest a focused strategic choice between involuntary intoxication and voluntary intoxication. In other words, Kerns and Osburn necessarily recognized intoxication to be a potential defense and

8

decided to pursue it. We think it fair to conclude from those clearly established efforts that they would have weighed both forms of intoxication as possible defenses. At the same time, however, neither Kerns nor Osburn could outline at the 60-1507 hearing—more than a decade after the trial—a specific evaluative process that led them to voluntary intoxication as the preferred defense. But, to reiterate, we are inclined to say the evidence circumstantially supports a reasonable strategic choice—a conclusion consistent with *Strickland*'s admonition that convicted defendants seeking habeas corpus relief must overcome "a strong presumption" that their trial lawyers acted "within the wide range of reasonable professional assistance." 466 U.S. at 689. The presumption remains even when the passage of time has inhibited a lawyer's ability to recount his or her precise thinking in coming to a particular trial decision where the record otherwise suggests a strategic assessment. See *Greiner v. Wells*, 417 F.3d 305, 326 (2d Cir. 2005).

The situation here contrasts to one in which the trial lawyer cannot recall whether he or she even considered an entire avenue of defense that might have been worthy of exploration and evaluation. That sort of sweeping failure of memory may not earn a presumption of strategic choice, since it provides no basis for inferring any factual investigation of a potentially viable defense or an evaluation of tactical options related to that defense. See *Rowland v. State*, 289 Kan. 1076, 1086, 219 P.3d 1212 (2009) (strategic choice entails lawyer's "'investigation of law and facts relevant to plausible options'") (quoting *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 [2004]).

For Farmer, voluntary intoxication as a defense had factual and legal advantages over involuntary intoxication. Factually, the evidence showed that Farmer had a vial of PCP with him when he was arrested shortly after the shooting and the break-in. The vial strongly implied Farmer used his own PCP to dip the marijuana cigarette—an implication factually undercutting an involuntary intoxication defense. As we have mentioned, involuntary intoxication also required a greater degree of impairment than voluntary

9

intoxication. Farmer's level of intoxication and resulting impairment were open to debate, particularly in light of the account of the events he gave to law enforcement officers.

Farmer now contends his trial lawyers' reliance on voluntary intoxication as a defense reflected a bad strategy because it did not allow the jury to acquit him of all of the charges. Farmer, however, overstates his argument. He says voluntary intoxication was not a defense to felony murder or to criminal discharge of a firearm at an occupied vehicle. But voluntary intoxication afforded a defense to felony murder if the predicate felony was a specific intent crime and, thus, one to which the defense applied. See *State v. Walker*, 252 Kan. 279, 297-98, 845 P.2d 1 (1993); *State v. Edwards*, 224 Kan. 266, 270-71, 579 P.2d 1209 (1978); *cf. State v. Salcido-Corral*, 262 Kan. 392, 400-01, 940 P.2d 11 (1997) (court affirms felony-murder conviction finding evidence sufficient to support alleged predicate felony); *State v. McCowan*, 223 Kan. 329, 332, 573 P.2d 1029 (1978) (felony-murder conviction reversed when evidence failed to support predicate felony). And Farmer relies on the Kansas Supreme Court's opinion in his direct appeal for the proposition that criminal discharge of a firearm is a general intent crime. There is language in *Farmer I* that certainly can be read that way. 285 Kan. at 546. But the statutory elements, on their face, at least suggest a specific intent. The parties and the district court, of course, did not have the advantage of *Farmer I* during the trial, since it was yet to be written. All of that funnels into the reasonableness of the decision to deploy voluntary intoxication as a primary defense.

More to the point, even if voluntary intoxication were not strictly speaking a proper legal defense to the charges of felony murder and criminal discharge of a firearm at the time of Farmer's trial, the district court did instruct the jurors they could consider voluntary intoxication as a defense. The instruction also correctly informed the jurors voluntary intoxication was a defense to the aggravated burglary charge. See *State v. Harper*, 235 Kan. 825, Syl. ¶ 1, 685 P.2d 850 (1984) (burglary specific intent crime). So legal niceties aside, Farmer received the practical benefit of the defense. The jurors,

however, decided the evidence, including that bearing on intoxication, didn't generate a reasonable doubt as to Farmer's guilt—a determination within their prerogative as the finders of fact.

Although the voluntary intoxication defense left Farmer fully vulnerable on the aggravated battery and aggravated assault charges, a tactical decision favoring that defense over involuntary intoxication would have been entirely reasonable. We have already explained the factual difficulty with the involuntary intoxication defense in this case given Farmer's possession of PCP. We have likewise pointed out that involuntary intoxication required a greater degree of mental impairment than voluntary intoxication—another sound reason to opt for voluntary intoxication in this case. Involuntary intoxication would have applied to all of the charges, but the chances a jury might credit the defense could realistically be assessed as minuscule. Accordingly, in considering the 60-1507 motion on remand, the district court properly found Farmer's lawyers, and in particular Kerns and Osburn, provided constitutionally adequate representation in assessing and presenting a voluntary intoxication defense.

Even if we were mistaken in that conclusion and Farmer's legal representation fell below the Sixth Amendment standard for adequacy, the 60-1507 motion fails for an entirely independent reason: Farmer cannot demonstrate prejudice under the *Strickland* standard. The jurors heard all of the relevant evidence on Farmer's intoxication. He does not now claim there was additional or better evidence that should have been presented. The jurors found that Farmer's intoxication (if any) failed to create a reasonable doubt as to his wrongful intent to commit criminal discharge of a firearm into a vehicle and to commit aggravated burglary. That intent represents a slice of the overall state of mind necessary to be convicted of those crimes. If the evidence failed to generate a reasonable doubt as to that part of those crimes, it could not have raised a reasonable doubt as to Farmer's lack of capacity to understand the basic wrongfulness of his conduct or his

11

ability to conform his conduct to the law—the legally required degree of impairment necessary to support an involuntary intoxication defense.

In other words, a jury that rejected the idea Farmer could not form a narrow, specific criminal intent also would have rejected the idea he lacked all understanding of the criminality of his conduct in killing Neal and burglarizing the Hayes' home. We may, therefore, reasonably conclude that had the jurors been instructed on involuntary intoxication, they would have reached the same verdict of guilty on each count. That means Farmer cannot establish the result at trial would have been any more beneficial to him. And so he cannot demonstrate prejudice satisfying the second part of the *Strickland* test for habeas corpus relief. The 60-1507 motion, therefore, fails regardless of the quality of the legal representation with respect to the intoxication defenses because the record shows Farmer would have been convicted even if Kerns and Osburn presented an involuntary intoxication defense for him.

We, therefore, affirm the district court.